FIRST ASSEMBLY OF GOD, INC.
d/b/a Assembly of God Church,
Appellant,

v.

TEXAS UTILITIES ELECTRIC
COMPANY, Appellee.

No. 05–00–00030–CV.

Court of Appeals of Texas,
Dallas.

July 31, 2001.

Stephen M. Halbeisen, Dallas, for appellant.

Lance C. Travis, Joann N. Wilkins, Burford & Ryburn, L.L.P., Dallas, for appellee.

Before Justices LAGARDE, BRIDGES, and O'NEILL.

## OPINION

LAGARDE, Justice.

First Assembly of God, Inc. appeals a summary judgment rendered in favor of Texas Utilities Electric Company (T.U.) in appellant's suit for damages to real property caused by an electrical fire in the church sanctuary. In three points of error, appellant contends the trial court erred in granting T.U.'s motion for summary judgment because: (1) there is a fact issue regarding whether T.U.'s conduct was the sole proximate cause of appellant's damages; (2) T.U.'s conduct was grossly negligent; and (3) T.U.'s Tariff for Electric Service is unreasonable and violates the open courts provision of article I, section 13 of the Texas Constitution. For reasons that follow, we overrule appellant's three points of error and affirm the trial court's judgment.

## Factual and Procedural Background

On January 21, 1998, members of the Assembly of God Church in Kaufman were attending evening prayer services when lightning struck a pole-mounted transformer near the church, interrupting the church's electrical power. When Pastor D.G. Council called 9-1-1, he was told there were seven people ahead of the church and that T.U. would restore power as soon as possible. Council lit some candles and escorted everyone out of the church. Two men checked the outside of the church to make sure the structure itself had not been damaged and determined the church had not been struck. After everyone left, Council locked the church and left for the evening. No one checked to see if any breakers had been tripped by the outage. The next morning, Council arrived at the church before 7:00 a.m. and noticed the power was still off. After checking the outside of the church and finding no damage, he gathered his reading materials and went to his office to work. That evening, when Gary Graves, the church's music director, went to the church to check the sound system, the electrical power still had not been restored. Graves left the church and called Council to tell him the power was still out. Council immediately called T.U.'s toll-free emergency line and spoke to a customer service representative. Council asked the T.U. representative to call him when T.U.

restored power.[1] The T.U. representative told Council T.U. would call him when power was restored. Council made this call to T.U. between 6:30 p.m. and 7:30 p.m. on January 22, 1998.

Larry Crocker, a senior serviceman with T.U., was dispatched to the church at about 7:30 p.m., January 22, 1998. When Crocker arrived, he found what he believed to be lightning damage to the electrical transformers, to the fuse cut out, and to the primary four-inch bell/disc insulator, which were on the T.U. pole facility serving the church. He reported the problem to dispatch, and both he and the dispatcher tried to contact Council to find out if they could wait until morning to restore power. They called the number listed on the trouble ticket, but reached only an answering machine.[2] They did not leave a message. Joe Williams, one of Crocker's supervisors, instructed Crocker to call a crew and replace the damaged facilities that evening because the last report by the church was that the lights were out. The crew replaced the transformers on the pole, as well as the fuse cut out and the bell/disc insulator. Crocker then helped prepare for power to be restored to the church by removing the church's meter base to prevent service beyond the meter base until they completed voltage checks. At approximately 12:33 a.m. the fuse cut outs were closed, which provided electrical power to the church's meter base through an underground service cable. Crocker measured the voltage at the meter base and found it was proper. He energized the electricity in the church by raising the bypass handle at the meter base, inserting and installing the meter, and lowering the bypass handle to allow electricity to go through the meter. The lights in the church and the parking lot came on. Crocker noticed nothing out of the ordinary between the time he energized the circuit and when he left the church. Crocker and his crew used normal practices during the replacement of the transformers and the restoration of power to the church. Unfortunately, within the next hour, the church was on fire, and the sanctuary was destroyed.

In November 1998, the church sued T.U., alleging T.U. was negligent and grossly negligent in repairing the electrical equipment and restoring power to the church.[3] T.U. moved for summary judg-

1. Appellant's original petition and answers to appellee's interrogatories indicated that Council asked T.U. to contact him *before* power was restored to the church. However, Council's deposition, appellant's response to appellee's motion for summary judgment, and appellant's brief indicate Council asked T.U. to call him *when* they restored power. For purposes of appeal, we rely on this later summary judgment evidence and appellant's statement of facts in its appellate brief.

2. According to Council's deposition, there is not an answering machine at the church office, but he does have an answering machine at home.

3. Specifically, the church contended T.U. was negligent and grossly negligent by: (1) failing to follow safe and reasonable procedures in the repair, replacement, and/or maintenance of electrical wires, equipment, transformers, and electrical distribution systems; (2) failing to follow safe and reasonable procedures in restoring the electrical power to the church; (3) failing to properly notify the church of the restoration of power; (4) failing to use adequate safeguards in the restoration of power where the risk of fire was significant; (5) restoring power in a manner T.U. knew or should have known subjected the property to unreasonable risk of harm; (6) failing to take reasonable and necessary precautions to prevent the risk of harm by fire; (7) failing to notify the church of the unreasonable risk of harm to the property associated with restoring power after a lightning strike; and (8) failing to use due care under the circumstances.

ment pursuant to rule 166a(b).[4] *See* Tex.R. Civ. P. 166a(b). Specifically, T.U. alleged that appellant's negligence claim was precluded by the Tariff for Electric Service, which limits T.U.'s liability. T.U. also filed a no-evidence motion for summary judgment under rule 166a(i) on appellant's negligence and gross negligence claims. *See* Tex.R. Civ. P. 166a(i). T.U. contended there was no evidence that its negligence, if any, was the sole proximate cause of appellant's damages and there was no evidence that T.U.'s conduct resulted from fraud or malice as required by section 41.003 of the Texas Civil Practice and Remedies Code. T.U.'s motion for summary judgment was supported by excerpts from the oral depositions of Council, Crocker, and David Reiter, appellant's expert. Other summary judgment evidence included Crocker's statement concerning the incident, excerpts from Reiter's fire analysis report, excerpts from appellant's answers and objections to defendant's first set of interrogatories, a certified copy of the Tariff, the affidavit of Joseph L. Stainton, T.U.'s expert engineer, appellant's original petition, and T.U.'s original answer. The trial court granted T.U.'s motion for summary judgment, without specifying the grounds. This appeal followed.

In three points of error, appellant contends the trial court improperly granted T.U.'s motion for summary judgment because (1) T.U. failed to negate its negligence as the sole proximate cause of appellant's damages; (2) T.U.'s conduct constitutes gross negligence, and T.U. failed to prove there was no evidence of gross negligence; and (3) T.U.'s Tariff for Electric Service is unreasonable and violates article I, section 13 of the Texas Constitution. We will first address appellant's third point of error attacking the reasonableness of the Tariff.

### Rule 166a(c) Summary Judgment[5]

The standards for reviewing summary judgment under rule 166a(c) are well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 394 (Tex.App.—Dallas 1998, no pet.). To prevail on summary judgment, a defendant must either (1) disprove at least one element of each of the plaintiff's theories of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am. Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 563 (Tex.App.—Dallas 1991, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 828 (Tex.App.—Dallas 1994, writ denied). Where, as here, the summary judgment does not state the grounds upon which it was granted, the nonmovant must show on appeal that each independent

---

**4.** Rule 166a(b) gives defending parties the authority to move for summary judgment.

**5.** Although T.U. moved for summary judgment pursuant to rule 166a(b), we review traditional summary judgment motions under the standards set out in Rule 166a(c). *See* Tex.R. Civ. P. 166a(c).

ground alleged is insufficient to support the summary judgment. *See Orozco*, 975 S.W.2d at 394; *Thomson v. Norton*, 604 S.W.2d 473, 476 (Tex.Civ.App.—Dallas 1980, no writ). The reviewing court must accept all evidence favorable to the non-movant as true. *Nixon*, 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the nonmovant and all doubts resolved in its favor. *Id.*

### The Tariff

In its motion for summary judgment, T.U. alleged appellant's negligence claim was precluded by the Tariff for Electric Service, which limits T.U.'s liability. Specifically, T.U. contended the Tariff provided that (1) T.U. was not liable for damages caused by faulty wiring past the point of delivery, acts of God, or the absence, inadequacy, or failure of protective devices; (2) T.U. had no duty to inspect the church's wiring or equipment before restoring electrical service; and (3) T.U. could only be held liable for damages past the point of delivery if T.U.'s negligence was the sole proximate cause of the damages. Appellant contends this Tariff is unreasonable and unenforceable as a matter of law. We disagree.

▬▬▬ T.U. is an electric utility as that term is defined in section 31.002(1) of the Texas Utility Code. TEX. UTIL.CODE ANN. § 31.002(1) (Vernon Supp.2001). A tariff is a document that lists a public utility's services and the rates for those services. *Henderson v. Cent. Power & Light Co.*, 977 S.W.2d 439, 446 (Tex.App.—Corpus Christi 1998, pet. denied). Unless found to be unreasonable, filed tariffs govern a utility's relationship with its customers and have the force and effect of law. *Id.* at 466–67. Because a tariff is presumed reasonable, the burden to prove unreasonableness is on the customer. *Southwestern Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 829 (Tex.App.—Corpus Christi 1991, writ denied). In this case, section 4.5.3.2 of the Tariff provides that the customer assumes full responsibility for electric energy furnished to the customer at or past the point of delivery and will indemnify and hold T.U. harmless from all claims for damages occurring upon the customer's premises arising from electric power and energy delivered by T.U. unless T.U.'s negligence was the sole proximate cause of the damages. Section 4.5.3.2 also provides that T.U. is not liable for damages caused by acts of God or the absence, inadequacy, or failure of protective devices which are the responsibility of the customer. Sections 4.5.2 and 4.5.3.1 provide that the customer is responsible for the design, installation, operation, and maintenance of electrical facilities beyond the point of delivery and is responsible for installing and maintaining protective devices necessary to protect the customer's equipment and process during irregular or interrupted service.[6]

---

6. The provisions of the Tariff applicable in this case include:

> **Section 4.5.2 Continuity and Quality of Electric Service**
> ... Customer is responsible for installing and maintaining protective devices as recommended or required by the then current edition of the National Electrical Code and other such devices as are necessary to protect Customer's equipment or process during irregular or interrupted service including, but not limited to voltage and wave

form irregularities, or the failure of part or all of the electrical service.

> **Section 4.5.3.1 Company Liability and Responsibility**
> Company is responsible for the design, installation, operation, and maintenance of electrical facilities up to and including the point of delivery except as provided elsewhere in this Tariff for Electrical Service. Customer is responsible for the design, installation, operation, and maintenance of electric facilities beyond the point of deliv-

Under Texas law, tariffs such as this one are reasonable as applied to economic damages resulting from the utility's ordinary negligence. *Houston Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668, 675 (Tex.1999) (holding that a tariff approved by the Public Utility Commission (P.U.C.) limiting liability for economic damages caused by electric utility's ordinary negligence was reasonable on its face); *Grant v. Southwestern Elec. Power Co.*, 20 S.W.3d 764, 772 (Tex.App.-Texarkana 2000, pet. granted) (holding that limiting a utility's liability for damages to gross negligence or willful misconduct was unconscionable as applied to personal injuries, but reasonable as applied to economic damages).[7] The Tariff at issue here has been approved by the P.U.C. and limits T.U.'s liability to instances where T.U.'s negligence is the sole proximate cause of damages and injuries. This case deals only with economic damages.[8] We hold that this Tariff is facially reasonable as to economic damages. Accordingly, T.U. was not liable for the church's damages unless T.U.'s negligence was the sole proximate cause of those damages. We overrule appellant's third point of error.[9]

## Rule 166a(i)—No-Evidence Summary Judgment

▬ Appellant's remaining points of error challenge T.U.'s no-evidence summary judgment. Under rule 166a(i), a party may move for summary judgment when, after an adequate time for discovery, the adverse party has no evidence to support one or more essential specified elements of his claim or defense on which the adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.—Dallas

ery except as provided elsewhere in this Tariff for Electric Service.

**Section 4.5.3.2 Customer Liability and Responsibility**

It is particularly understood that the Customer assumes full responsibility for electric energy furnished to Customer at and past the point of delivery and will indemnify the Company against and hold the Company harmless from all claims for damages including but not limited to injuries to any persons, including death resulting therefrom, and damages to property occurring upon the premises of the Customer arising from electric power and energy delivered by Company whether or not caused by the negligence of the Company except when the negligence of Company or its agent or agents was the sole proximate cause of such injuries, death to persons or damages to property.

Without limiting the foregoing, Company is not and shall not be liable to Customer for damages occasioned by:

(a) irregularities or interruptions (of any duration), or failure to commence electric service, caused in whole or part by:

1) ... acts of God (including weather and its resulting consequences), ...

4) the absence, inadequacy or failure of protective devices which are the responsibility of the Customer, ...

6) any other act or thing reasonably beyond the control of Company or as may be authorized elsewhere in this Tariff for Electric Service; ...

7. Petition for review was granted only on the issue of whether the utility company's tariff can limit liability for *personal injuries* caused by the utility's ordinary negligence. *Southwestern Elec. Power Co. v. Grant*, 44 Tex. Sup. Ct. J. 210, 211 (Dec. 23, 2000).

8. In relevant part, *economic damages* means "compensatory damages for pecuniary loss...." Tex. Civ. Prac. & Rem.Code Ann § 41.001(4) (Vernon 1997).

9. Appellant also contends the Tariff is unreasonable in the "new age of utility deregulation" because the limited liability provisions in the Tariff are no longer necessary to protect the financial status of utility companies. We need not reach the impact of deregulation because this cause of action accrued before the Texas Legislature passed deregulation legislation in 1999.

2000, no pet.). A no-evidence motion places the burden on the nonmovant to present evidence raising a genuine fact issue on the challenged elements. *Gen. Mills,* 12 S.W.3d at 832. If the nonmovant is unable to produce summary judgment evidence raising a genuine issue of material fact on the challenged elements, the trial court must grant the motion. Tex.R. Civ. P. 166a(i); *Gen. Mills,* 12 S.W.3d at 832.

 Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Gen. Mills,* 12 S.W.3d at 832–33; *see Roth v. FFP Operating Partners, L.P.,* 994 S.W.2d 190, 195 (Tex.App.—Amarillo 1999, pet. denied); *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet.). Thus, our task as an appellate court is to determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Gen. Mills,* 12 S.W.3d at 833; *see Roth,* 994 S.W.2d at 195; *Jackson,* 979 S.W.2d at 70. We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Gen. Mills,* 12 S.W.3d at 833; *see Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Gen. Mills,* 12 S.W.3d at 833. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow,* 953 S.W.2d at 711; *see Gen. Mills,* 12 S.W.3d at 833.

*1. Negligence*

In its first point of error, appellant contends there is a fact issue regarding whether T.U.'s negligence was the sole proximate cause of appellant's damages. T.U. contends there is no evidence that its negligence, if any, was the sole proximate cause of appellant's damages. We agree with T.U.

 Negligence claims consist of the following elements: (1) a duty owed to the plaintiff, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). To establish such a claim, the plaintiff must show the defendant's action or failure to act was a proximate cause of his damages. *Id.; El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). The existence of a duty is ultimately a question of law for the court to decide from the facts surrounding the occurrence in question. *Phillips,* 801 S.W.2d at 525.

**a. Duty**

 Appellant contends T.U. owed appellant the following duties: (1) a duty of ordinary care in a manner that would prevent electricity from causing damages to the church's real and personal property; (2) a duty to exercise reasonably prudent and ordinary care in the repair and/or replacement of the transformers, electric meter, and related equipment outside of the church; and (3) a duty to notify the church and/or Council before restoring electrical power. Generally, a public utility has a duty to exercise ordinary and reasonable care, but the degree of care required must be commensurate with the danger. *W. Tex. Utils. v. Renner,* 53 S.W.2d 451, 453–54 (Tex. Comm'n App. 1932, holding approved); *Tex. Cities Gas Co. v. Dickens,* 140 Tex. 433, 438, 168 S.W.2d 208, 210 (1943). This "commensu-

rate with the danger" standard does not impose a higher duty of care; rather, it more fully defines what is ordinary care under the facts presented. *Renner,* 53 S.W.2d at 453–54. Texas courts examine the language of the tariff to determine if a duty exists. *Texaco, Inc. v. Cent. Power & Light Co.,* 955 S.W.2d 373, 377–78 (Tex. App.—San Antonio 1997, pet. denied); *Cent. Power & Light Co. v. Romero,* 948 S.W.2d 764, 766–67 (Tex.App.—San Antonio 1996, writ denied).

■■■■ Here, T.U. had a duty to exercise ordinary care when it replaced the transformers and other equipment outside of the church and restored electricity to the church. But under the Tariff, it was appellant's responsibility to insure that electrical equipment located downstream, and therefore inside the church, was designed and maintained so as not to cause damage to the church. In section 4.5.3.2, the Tariff explicitly states that the church "assumes full responsibility for electric energy furnished to Customer at and past the point of delivery." Under this provision, T.U. did not have a duty to check equipment downstream to insure it was installed and maintained properly. There is no evidence that T.U. did not act with ordinary care when its crew replaced the damaged facilities. In fact, the evidence shows Crocker and his crew used normal practices during the replacement of the transformers, the fuse cut out, and the bell/disc insulator and the restoration of power to the church. Crocker checked the voltage before restoring power, and nothing indicated there was a problem with the line. Moreover, when the crew restored power to the church, the lights came on, and Crocker did not notice anything out of the ordinary. From this record, we hold there was no evidence that T.U. breached its duty of ordinary care when it replaced the transformer equipment and restored electrical power to the church.

■■■■ Appellant also contends T.U. owed the church the duty to notify the church or Council before restoring electrical power. The Tariff imposes no such duty on T.U., and there is no evidence in the record that T.U. generally notifies its customers before restoring power. Moreover, it is the customer's responsibility under the Tariff to insure that its equipment is installed and maintained properly so no damage occurs when electricity is restored following an outage. Appellant appears to contend the T.U. customer service representative who spoke to Council on January 22, 1998 assumed a duty to notify Council when the power was restored to the church. We construe appellant's argument to be that the "assumed duty" rule embodied in section 323 of the Restatement (Second) of Torts applies to this case. Under the assumed duty rule, one who voluntarily engages in an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983); *Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 119 (Tex.1976); *First Interstate Bank of Texas, N.A. v. S.B.F.I., Inc.,* 830 S.W.2d 239, 244 (Tex.App.—Dallas 1992, no writ). We need not determine whether T.U. assumed a duty to appellant because, even if the customer service representative did assume a duty to notify Council, this would not defeat summary judgment; there is no evidence that T.U.'s failure to notify Council when power was restored was the sole proximate cause of appellant's damages.

**b. Proximate Cause**

Appellant contends T.U.'s acts and omissions proximately caused its damages. In its original petition, appellant contended T.U. committed various negligent acts and

omissions;[10] but, in its appellate brief, appellant contends only that T.U. knew or should have known that restoring power to the church posed a danger to the premises and, despite this knowledge, T.U. restored power without notifying the church or Council. Even assuming T.U. breached a duty to notify appellant, under the Tariff, T.U. can be held liable for its negligence only if that negligence was the sole proximate cause of appellant's damages.

The two elements of proximate cause are cause in fact and foreseeability. *City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Tex.1987). "Cause in fact" means the act or omission was a substantial factor in bringing about the injury and, without it, the harm would not have occurred. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992); *City of Gladewater,* 727 S.W.2d at 517; *Nixon,* 690 S.W.2d at 549. The plaintiff need not exclude all possibilities; it is sufficient to prove that the greater probability is that the defendant's conduct, alone or in contribution with others, was the cause of the harm. *El Chico Corp.,* 732 S.W.2d at 313. "Foreseeability" means the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Travis,* 830 S.W.2d at 98; *Nixon,* 690 S.W.2d at 549–50; *Mo. Pac. R.R. Co. v. Am. Statesman,* 552 S.W.2d 99, 103 (Tex.1977). The test for foreseeability is whether the defendant, as a person of ordinary intelligence and prudence, should have anticipated the danger

to others created by his act, although he is not required to anticipate just how the injuries will arise. *Brown v. Edwards Transfer Co.,* 764 S.W.2d 220, 223 (Tex. 1988). There may be more than one proximate cause. *El Chico,* 732 S.W.2d at 313–14.

"Sole proximate cause" means the "only" proximate cause. If there is more than one proximate cause of an event, no single proximate cause can be the sole proximate cause. *Goolsbee v. Tex. & N.O.R. Co.,* 150 Tex. 528, 531, 243 S.W.2d 386, 388 (1951). Proximate cause is typically a question of fact. However, lack of proximate cause may be established as a matter of law where the circumstances are such that reasonable minds cannot arrive at a different conclusion. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471–72 (Tex.1991); *Boyd v. Fuel Distrib., Inc.,* 795 S.W.2d 266, 272 (Tex.App.—Austin 1990, writ denied).

Appellant presented no evidence that restoring power without notifying appellant was the sole proximate cause of the fire and resulting damage. At most, appellant's evidence showed that if T.U. had notified Council when it restored power to the church, Council may have been able to extinguish the fire before it destroyed the sanctuary. This does not amount to more than a scintilla of evidence that T.U.'s negligence was the sole proximate cause of the damages. Viewing the evidence in the

---

**10.** The church contended that T.U. was negligent and grossly negligent by: (1) failing to follow safe and reasonable procedures in the repair, replacement and/or maintenance of electrical wires, equipment, transformers and electrical distribution systems; (2) failing to follow safe and reasonable procedures in restoring the electrical power to the church; (3) failing to properly notify the church of the restoration of power; (4) failing to use adequate safeguards in the restoration of power where the risk of fire was significant; (5) restoring power in a manner T.U. knew or should have known subjected the property to unreasonable risk of harm; (6) failing to take reasonable and necessary precautions to present the risk of harm by fire; (7) failing to notify the church of the unreasonable risk of harm to the property associated with restoring power after a lightning strike; and (8) failing to use due care under the circumstances.

light most favorable to the nonmovant, the summary judgment evidence shows there were multiple proximate causes for the fire, including the initial lightning strike, damaged wiring inside the church, appellant's own negligence in failing to turn off all equipment after the electricity was interrupted, and ultimately the restoration of power. Even appellant's own expert agreed that if the lightning strike had not damaged the church's wiring, an electrical fault would not have been created, and the fire would not have occurred. Even though restoring power to the church allowed electricity to flow through damaged wiring, causing arcing and ultimately fire, that is only evidence that restoring power was one proximate cause of the fire. The evidence clearly shows that many other acts or omissions were proximate causes of the fire. Therefore, no single proximate cause can be the sole proximate cause. *See Goolsbee,* 243 S.W.2d at 388. We overrule appellant's first point of error.

### 2. Gross negligence

In its second point of error, appellant contends summary judgment was improper because it raised a genuine issue of material fact regarding whether T.U.'s conduct was grossly negligent. We disagree. The definition of gross negligence includes two elements: (1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 20 (Tex.1994). Under the first element, "extreme risk" is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plain-

tiff. *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex.1998). Under the second element, "actual awareness of risk" means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care. *Id.* "Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment; it means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected. *Moriel,* 879 S.W.2d at 20. An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent. *Id.* at 22. Only if the defendant's act or omission is unjustifiable and likely to cause serious harm can it be grossly negligent. *Id.* Although gross negligence does refer to a different character of conduct than ordinary negligence, one's conduct cannot be grossly negligent without being negligent. *Trevino v. Lightning Laydown, Inc.,* 782 S.W.2d 946, 949 (Tex.App.—Austin 1990, writ denied).

Here, as discussed above, there is no evidence T.U. breached any duty owed to appellant, and therefore, T.U. was not negligent. However, even assuming T.U. breached a duty to notify appellant when power was restored, there was no evidence that such conduct rose to the level of gross negligence. Neither the customer service representative nor the service crew had actual knowledge that appellant's wires were damaged downstream or that Council failed to turn off the breakers and other equipment when the outage occurred. Moreover, the evidence shows that failing to call Council was not unjustifiable because customers often forget to close the breakers when an outage occurs, and, if the customer's wiring is not damaged, arcing and fire do not occur. Moreover, here, the service crew saw no evidence of dam-

aged wiring downstream and did not know Council requested notification when power was restored. Thus, the service crew had no knowledge of the potential for damage, and there is no evidence that failing to notify Council created a likelihood of serious damage to the church. When the voltage checks were normal and the lights came on without incident, the service crew was not unjustified in thinking power had been successfully and safely restored. Also, there is no evidence that any standard operating procedure exists at T.U. requiring service crews to contact the customer before restoring power when a lightning strike has damaged the transformers. There was merely speculation that the T.U. repair crew should have known the lightning strike damaged the wiring inside the church. T.U.'s conduct fails to meet either element of gross negligence. We overrule appellant's second point of error.

For all of the foregoing reasons, we overrule appellant's three points of error and affirm the trial court's judgment.