OPINION
 

 Opinion by
 

 Justice CASTILLO.
 

 This is a wrongful-death and survivor-ship action. Appellant Military Highway Water Supply Corporation (“Military Highway”) challenges a jury verdict and judgment in favor of the estates and survivors of Mercedes Melendez Morin (“Morin”) and Ausencio Bautista Ramos (“Bautista”).
 
 [2]
 
 Military Highway brings four issues for our review, claiming: (1) it owed no duty to Morin and Bautista; (2) the evidence is legally insufficient to support the proximate-cause foreseeability element of Morin and Bautista’s negligence claim; (3) the trial court improperly awarded one appellee $60,000 over the damages found by the jury; and (4) the trial court did not apply a stipulated statutory limitation on the total damages awarded to Bautista’s estate and survivors. We suggest remittitur. If the re-mittitur is filed, we reverse and render in part, modify the judgment, and affirm in part as modified. If the remittitur is not
 
 *732
 
 filed, we reverse and render judgment as to one appellee and reverse and remand the remainder of the case.
 

 I. BACKGROUND
 

 Military Highway is a non-profit public utility. It holds a utility easement in Cameron County adjacent to Texas farm-to-market road 732 (“FM 732”). The easement gives Military Highway the “right to operate, inspect, repair, maintain, replace and remove utility pipeline(s).”
 

 Near Military Highway’s utility easement, FM 732 is a two-lane highway with a posted speed limit of fifty-five miles per hour. The parties agree that Cameron County has no local stock law in place.
 
 [3]
 
 Livestock freely roam along FM 732.
 

 Military Highway’s internal procedures for maintaining its utility easements reflect regulations promulgated by the Texas Department of Transportation.
 
 [4]
 
 Under certain circumstances, those regulations and procedures require Military Highway to fill excavations in its easements. On June 3, 1996, Military Highway dug an excavation to install a water meter on its easement. The excavation was within thirty feet of FM 732. After completing the installation, Military Highway did not fill in the resulting three-foot-diameter hole. In July of 1996, a neighboring landowner notified Military Highway the hole had not been filled. Military Highway took no action.
 

 On the morning of August 1, 1996, Morin was driving his car down FM 732. Bautista was riding in the front passenger seat. Two other passengers were in the back seat. A horse crossed the highway. The car struck the animal. The horse smashed through the windshield. The car careened across the oncoming lane of traffic. It left the pavement on the opposite side of the highway. Over five hundred feet from where it collided with the horse, the car reached Military Highway’s open excavation. The car’s right front wheel climbed a mound of dirt piled next to the hole. Its left front wheel dropped in the hole. The car vaulted through the air and flipped. Rolling to its left, the car slammed to the ground. It ended up on its roof and crashed into a tree. Mere seconds had elapsed since horse and car collided.
 

 Morin and Bautista died. The two backseat passengers survived.
 

 II. ISSUES ON APPEAL
 

 In its first issue, Military Highway asserts it owed no duty to Morin and Bau-tista as a matter of law. In issue two, Military Highway challenges the legal sufficiency of the evidence to sustain the proximate-cause foreseeability element of the appellees’ negligence cause of action. In its third issue, Military Highway alternatively contends the judgment improperly awarded Maria Del Pilar Mota $385,000, when the jury found her damages to be $325,000. Finally and also in the alternative, Military Highway complains in its fourth issue the trial court did not apply a stipulated damages cap pursuant to section 84.006 of the civil practice
 
 *733
 
 and remedies code.
 
 See
 
 Tex. Civ. Prac.
 
 &
 
 Rem.Code Ann. § 84.006 (Vernon 1997). It argues that the damages the judgment awarded to Bautista’s estate and survivors should be reduced from a total of $630,710, including pre-judgment interest, to $500,000. We first turn to the law of negligence.
 

 III. COMMON-LAW NEGLIGENCE
 

 Texas law requires proof of three familiar elements to sustain a cause of action for negligence: (1) a legal duty-owed by one party to another; (2) a breach of that duty; and (3) damages proximately caused by the breach.
 
 D. Houston, Inc. v. Love,
 
 92 S.W.3d 450, 454 (Tex.2002). Proximate cause has two components: (1) cause in fact; and (2) foreseeability.
 
 Doe v. Boys Clubs of Greater Dallas, Inc.,
 
 907 S.W.2d 472, 477 (Tex.1995). Military Highway does not claim on appeal it did not breach any duty it owed to Morin and Bautista. Nor does it challenge cause in fact. Rather, it focuses its appeal on duty and foreseeability. In its first issue, Military Highway argues it owed no duty to Morin and Bautista because: (1) their diversion from the highway was not in the ordinary course of travel; and (2) the accident in which Morin and Bautista died was not foreseeable.
 

 A. Duty
 

 1.The Standard of Review
 

 The duty one party owes another is a question of law.
 
 City of McAllen v. De La Garza,
 
 898 S.W.2d 809, 810 (Tex. 1995). A trial court decides the duty question from the particular facts surrounding the event.
 
 Id.
 
 We review de novo the trial court’s application of the law to the facts in determining duty.
 
 El Paso Natural Gas Co. v. Mineo Oil & Gas, Inc.,
 
 8 S.W.3d 309, 312 (Tex.1999). Duty is a threshold inquiry.
 
 Thapar v. Zezulka,
 
 994 S.W.2d 635, 637 (Tex.1999). The law imposes no negligence liability on a party who owes no duty of care to the claimant.
 
 Id.
 

 2.The Undisputed Facts
 

 Military Highway contracted to provide water services to property adjacent to FM 732, a farm-to-market road in an open-range county with a posted speed limit of fifty-five miles per hour. Military Highway held an easement on the property to inspect, repair, and maintain utility pipelines. In the exercise of its public utility function, Military Highway entered the easement and installed a water meter. The installation left an open excavation within thirty feet of FM 732. At the time of the accident, Military Highway had actual knowledge of the open excavation. Government regulations as well as its own internal procedures required it to fill the hole. It did not. Nor did the utility explain its failure to do so.
 

 3.Military Hiyhway’s Duty of Care
 

 a. The Duty of Care Imposed on Public Utilities
 

 Military Highway is a non-profit “retad public utility.”
 
 See
 
 Tex. WateR Code Ann. § 13.002(19) (Vernon 2000). To permit them to better serve the public, Texas law long has accorded special privileges and powers to public utilities.
 
 See Lone Star Gas Co. v. Mun. Gas Co.,
 
 117 Tex. 331, 3 S.W.2d 790, 792 (1928). These special rights include the power to “acquire land, an interest in land, materials, waste grounds, easements, rights-of-way, equipment, contract or permit rights or interests, and other property, real or personal, considered necessary for the purpose of accomplishing any one or more of the district’s or water supply corporation’s purposes.” Tex. Water Code Ann. § 49.218 (Vernon Supp.2003).
 

 
 *734
 
 The privileges enjoyed by public utilities carry with them duties and obligations consistent with the purposes of their creation.
 
 See Lone Star Gas Co.,
 
 3 S.W.2d at 792. A public utility has a duty to exercise ordinary and reasonable care in performing its functions.
 
 See First
 
 As
 
 sembly of God, Inc. v. Tex. Utils. Elec. Co.,
 
 52 S.W.3d 482, 491 (Tex.App.-Dallas 2001, no pet.). The degree of care is commensurate with the danger.
 
 Id.
 
 The commensurate-with-the-danger standard does not impose a duty higher than that of ordinary care.
 
 Id.
 
 at 491-92. Rather, it more fully defines what constitutes ordinary care under the facts presented.
 
 Id.
 
 Thus, in performing its functions, a public utility must use reasonable care and prudence to prevent injury at places where others have the right to go for work, business, or pleasure.
 
 See Tex. Utils. Elec. Co. v. Gold Kist, Inc.,
 
 817 S.W.2d 749, 752 (Tex.App.-Eastland 1991),
 
 rev’d on other grounds,
 
 830 S.W.2d 91 (Tex.1992). We conclude that Military Highway, as a public utility, owed a general duty of care to the public in performing its functions.
 
 Id.
 
 at 752.
 

 b.
 
 The Duty of Care Imposed on Possessors of Property Adjacent to a Road
 

 (1) The General Duty Owed to Travelers
 

 In addition to a general duty of care in performing its public utility functions, Texas law imposes a second duty on Military Highway with regard to excavations on easements adjacent to roads:
 

 A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
 

 (a) are traveling on the highway, or
 

 (b) foreseeably deviate from it in the ordinary course of travel.
 

 De La Garza,
 
 898 S.W.2d at 811 (quoting Restatement (Second) of Torts, § 368);
 
 see Alamo Nat’l Bank v. Kraus,
 
 616 S.W.2d 908, 911 n. 3 (Tex.1981).
 

 The hole was less than thirty feet from FM 732. Government regulations and the utility’s own procedures anticipated that vehicles might leave the highway and accidentally encounter the excavation. Accordingly, we find that Military Highway owed a specific duty of care to travelers on FM 732 to fill the hole left by the excavation in its easement.
 
 See De La Garza,
 
 898 S.W.2d at 811.
 

 We next decide if Morin and Bautista belonged to the class of persons to whom Military Highway owed that specific duty.
 
 See Tex. Home Mgmt. v. Peavy,
 
 89 S.W.3d 30, 38-39 (Tex.2002) (discussing tort duty of care owed by operator of half-way house to class of individuals). Military Highway contends they did not, arguing that Morin and Bautista’s deviation from the highway after striking the horse was not foresee-ably in the ordinary course of travel.
 

 (2)
 
 Limitation on the Scope of Section 368: the “Ordinary Course of Travel” Requirement
 

 The possessor of excavated land adjacent to a road owes a duty of care to motorists who encounter the excavation after: (1) traveling with reasonable care on the road; and (2) foreseeably deviating from the road in the ordinary course of travel.
 
 De La Garza,
 
 898 S.W.2d at 811. A traveler is not “in the ordinary course of travel” unless the traveler’s deviation from the road is a normal incident of travel.
 
 Id.
 
 
 *735
 
 Accordingly, a traveler whose deviation from the road is not one a possessor of property adjacent to the road reasonably could anticipate is not “in the ordinary course of travel.”
 
 Id.
 
 Similarly, a traveler who intentionally leaves the road for a purpose not reasonably connected with travel is not “in the ordinary course of travel.”
 
 Id.
 

 Military Highway urges that Morin and Bautista’s deviation from the highway after hitting the horse was not one it reasonably could anticipate. It follows, Military Highway argues, that Morin and Bautista were not engaged “in the ordinary course of travel” when they left the highway. Accordingly, the utility concludes, the two men did not belong to the class of persons to whom it owed a duty to fill the excavation on its easement.
 

 A number of courts have interpreted section 368 in deciding if deviation from a road was “in the ordinary course of travel.”
 
 See, e.g., id.
 
 at 811-12 (and cited cases). Negligent or unlawful operation of a vehicle is not “in the ordinary course of travel.”
 
 See id.
 
 at 811 (holding that passenger in vehicle that veered off road after driver fell asleep or passed out not in “ordinary course of travel” when driver had .11 blood-alcohol level);
 
 Gorrell v. Tex. Utils. Elec. Co.,
 
 915 S.W.2d 55, 60 (Tex.App.-Fort Worth 1995), writ denied, 954 S.W.2d 767 (Tex.1997) (per curiam) (refusing to apply section 368 to extend tort duty to inattentive driver who struck light pole after failing to brake);
 
 see also Cooper v. Unimin Corp.,
 
 639 F.Supp. 1208, 1215 (D.Idaho 1986) (driver’s deviation from road to relieve himself not reasonably connected with travel);
 
 Collier v. Redbones Tavern & Rest, Inc.,
 
 601 F.Supp. 927, 930 (D.N.H.1985) (driver was intoxicated and speeding);
 
 Jacque By & Through Dyer v. Pub. Serv. Co.,
 
 890 P.2d 138, 139 (Colo.Ct.App.1994) (driver was intoxicated);
 
 Battisfore v. Moraites,
 
 186 Ill.App.3d 180, 133 Ill.Dec. 938, 541 N.E.2d 1376, 1382 (2d Dist.1989) (driver was speeding through sharp curve in excess of posted limit). Finally, in a case similar to this one, the Connecticut Supreme Court held that a passenger in a pickup truck was not “in the ordinary course of travel” when the truck’s intoxicated driver left the road, drove up a dirt mound, and overturned.
 
 Soares v. George A. Tomasso Constr. Corp.,
 
 66 Conn.App. 466, 784 A.2d 1041, 1046 (2001). In each of these cases, some culpability attached to the driver, a factor that removed the claimant from the class of persons owed a duty by the possessor of property adjacent to the road.
 

 Military Highway introduced evidence at trial, through expert accident-reconstruction testimony, that Morin neither swerved nor braked before hitting the horse. However, the utility introduced no evidence that any failure to react on Morin’s part resulted from inattention, excessive speed, or intoxication or that the accident arose from any circumstance other than the sudden appearance of a horse in the middle of the highway. On appeal, even Military Highway blames the horse, not Morin.
 
 [5]
 

 The language of section 368 requires us to incorporate a foreseeability component into our duty analysis.
 
 See
 
 Restatement (Second) of ToRts, § 368 (1965). The question, then, is whether Morin and Bautista’s deviation from FM 732, through no fault of Morin’s, was foreseeably in the ordinary course of travel. To answer the foreseeability question in the context of deciding the scope of Military Highway’s duty, we consider what constitutes “the ordinary course of travel” along FM 732, not the “ordinary course of travel” in general.
 
 See De La Garza,
 
 898 S.W.2d at 810 (noting that court decides duty question
 
 *736
 
 “from the facts surrounding the occurrence in question”);
 
 cf. Swope v. Northern Ill Gas Co.,
 
 251 Ill.App.3d 850, 191 Ill.Dec. 251, 623 N.E.2d 841, 846 (1993), appeal denied, 154 Ill.2d 570, 197 Ill.Dec. 497, 631 N.E.2d 719 (1994) (noting that it is “foreseeable that one may encounter a deer” while traveling interstate highway but refusing to impose duty on adjacent landowner to protect motorist from driving into roadside ditch to avoid hitting it).
 

 Thus, in addition to the absence of any evidence of culpability on Morin’s part, we find two facts dispositive. First, the posted speed limit where the accident occurred is fifty-five miles per hour. Second, livestock freely (and legally) range along FM 732.
 
 [6]
 
 We find that a motorist’s deviation from the highway after a full-speed collision with a large animal was foreseeably in the ordinary course of travel on FM 732. Accordingly, we hold that Morin and Bau-tista belonged to the class of persons to whom Military Highway owed a duty to fill the excavation on its easement. We overrule Military Highway’s first issue.
 

 We limit our holding to the conclusion that Military Highway, as a public utility with an easement adjacent to FM 732, owed a duty to Morin and Bautista on the facts of this case. Nonetheless, we do not interpret the utility’s argument to go so far as to suggest it would owe no duty to Morin and Bautista under other circumstances.
 
 [7]
 
 We reiterate that government regulations and the utility’s own procedures anticipated that vehicles might leave the highway and accidentally encounter the excavation. For example, Morin’s car might have run over an armadillo, veered to the right at low speed, bumped into the unfilled excavation less than thirty feet away, and sustained minor damage. The catastrophic magnitude of this tragedy neither enlarges nor diminishes Military Highway’s duty.
 

 We conclude that the gravamen of Military Highway’s complaint goes to causation. We turn to Military Highway’s second issue, in which the utility challenges the legal sufficiency of the evidence to sustain the proximate-cause foreseeability element of Morin and Bautista’s negligence claims.
 

 B. Foreseeability
 

 1. The Legal-Sufficiency Standard of Review
 

 We address legal-sufficiency challenges as either “no-evidence” or “matter-of-law” issues.
 
 Gooch v. Am. Sling Co.,
 
 902 S.W.2d 181, 183-84 (Tex.App.Fort Worth 1995, no writ). When the party complaining on appeal did not bear the burden of proof at trial, we analyze the issue as a “no-evidence” challenge.
 
 Id.
 
 In challenging the legal sufficiency of the evidence to support a finding on which an adverse party bore the burden of proof, the appellant must show that the record presents no evidence to support the adverse finding.
 
 Croucher v. Croucher,
 
 660 S.W.2d 55, 58 (Tex.1983).
 

 In examining the record for sufficient evidence of foreseeability, we consider only the probative evidence and inferences that support the finding.
 
 See Southwest Key Program v. Gil-Perez,
 
 81 S.W.3d 269, 274 (Tex.2002);
 
 see also Lenz v. Lenz,
 
 79 S.W.3d 10, 19 (Tex.2002).
 
 [8]
 
 We
 
 *737
 
 disregard all evidence and inferences to the contrary.
 
 See Gil-Perez,
 
 81 S.W.3d at 274;
 
 see also Lenz,
 
 79 S.W.3d at 19. We overrule a legal-sufficiency issue if the record reflects any evidence of probative force to support the finding. ACS
 
 Investors, Inc. v. McLaughlin,
 
 943 S.W.2d 426, 430 (Tex.1997). If there is more than a scintilla of evidence to support the finding, the legal-sufficiency challenge fails.
 
 Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc.,
 
 960 S.W.2d 41, 48 (Tex.1998).
 

 The evidence is no more than a scintilla and, in legal effect, is no evidence “[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence.”
 
 Kindred v. Con/Chem, Inc.,
 
 650 S.W.2d 61, 63 (Tex.1983). Conversely, more than a scintilla exists when the evidence “rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.”
 
 Transp. Ins. Co. v. Moriel,
 
 879 S.W.2d 10, 25 (Tex.1994).
 

 2. The Law of Proximate-Cause Foreseeability
 

 The foreseeability component of proximate cause demands proof the defendant reasonably should have anticipated the danger to others created by its conduct.
 
 Boys Clubs of Greater Dallas,
 
 907 S.W.2d at 477. In the context of proximate cause, foreseeability requires only the general danger to be foreseeable, not the precise sequence of events that produced the harm.
 
 Lee Lewis Constr., Inc. v. Harrison,
 
 70 S.W.3d 778, 785 (Tex.2001).
 

 3. Proximate-Cause Foreseeability Analysis
 

 Appellees bore the burden of proof at trial. Accordingly, we review Military Highway’s legal-sufficiency challenge as a no-evidence issue.
 
 See Gooch,
 
 902 S.W.2d at 183. Military Highway must show that the record.presents no probative evidence to support the adverse foreseeability finding.
 
 See Croucher,
 
 660 S.W.2d at 58.
 

 Military Highway argues that Morin and Bautista’s deaths were too remote from its failure to fill the excavation to be foreseeable. In analyzing Military Highway’s argument, we consider only the probative evidence and inferences that support the foreseeability finding.
 
 See Gil-Perez,
 
 81 S.W.3d at 274;
 
 see also Lenz,
 
 79 S.W.3d at 19. We disregard all evidence and inferences to the contrary.
 
 See Gil-Perez,
 
 81 S.W.3d at 274;
 
 see also Lenz,
 
 79 S.W.3d at 19.
 

 Military Highway dug a hole in an open-range county less than thirty feet from a farm-to-market road where the posted speed limit is fifty-five miles per hour. It left the hole unfilled: (1) without explanation; (2) in violation of government regulations as well as its own internal procedures imposed in anticipation of vehicles leaving the highway and encountering the excavation; and (3) in spite of actual, not merely constructive, knowledge of the open excavation.
 

 A short time after Military Highway excavated the hole, Morin and Bautista
 
 *738
 
 were traveling FM 732 at the posted speed limit. A horse crossed the highway. Through no fault of his own, Morin hit the animal. The impact caused the car to veer to the left across the opposite lane of traffic and leave the highway. Morin lost consciousness. Careening out of control, the car reached Military Highway’s unfilled hole in less than ten seconds. One of the car’s front wheels climbed the mound of dirt left from the excavation. The other front wheel plunged into the hole. The car flipped and rolled. Still hurtling at least thirty-five miles an hour, the car slammed upside down into a tree more than one hundred feet from the hole.
 

 Morin and Bautista did not die of the injuries they received in the collision with the horse. They died of the head injuries they sustained when they were ejected from the car after it hit the excavation, flipped, and rolled.
 

 In some cases, the happenstance of place and time is too far removed from the defendant’s conduct for liability to attach.
 
 Lear Siegler, Inc. v. Perez,
 
 819 S.W.2d 470, 472 (Tex.1991). This is not one of those cases. In
 
 Lear Siegler,
 
 the manufacturer of a flashing roadway sign was not held liable for an accident that resulted when a driver who had fallen asleep at the wheel struck a worker fixing a malfunctioning sign.
 
 Id.
 
 The supreme court held that the chain of events was
 
 too
 
 remote to impose liability for the worker’s injuries on the sign manufacturer. Id. Cases like
 
 Lear Siegler
 
 are characterized by a causal break in place and time, such as that between manufacture of the malfunctioning sign and the worker’s injury.
 
 See id.
 

 In the same way, independent acts of the claimant between the alleged negligence and the injury also can foreclose liability.
 
 See Pifer v. Muse,
 
 984 S.W.2d 739, 742-43 (Tex.App.-Texarkana 1998, no pet.) (refusing to hold homeowner liable for gunshot sustained by would-be rescuer when weapon discharged in heat of fire started by untended candle after he tried to enter house in mistaken belief occupant needed help);
 
 see also Pinkerton’s v. Manriquez,
 
 964 S.W.2d 39, 48 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (holding that employee’s decision to put car in neutral, stand behind it, and push it up steep ramp in parking garage too remote from security guard’s instruction to assist customer with stalled car for instruction to constitute cause in fact of employee’s injuries).
 

 We find no remoteness in place and time between Military Highway’s failure to fill the hole and Morin and Bautista’s deaths. Nor do we find any independent decision or action on Morin’s part that broke the chain of causation.
 
 See Manriquez,
 
 964 S.W.2d at 48;
 
 see also Muse,
 
 984 S.W.2d at 741-42.
 

 The same locale links highway, horse, car, and hole. Propelled across a Texas pasture, unerringly toward exactly the wrong place, in a blink of time Morin and Bautista died. Although exact details of the sequence of events that ended Morin and Bautista’s lives may not have been foreseen by Military Highway, we conclude that the general danger created by its failure to fill the excavation was foreseeable.
 
 See Lee Lewis Constr.,
 
 70 S.W.3d at 785.
 

 Bad luck sometimes makes bad law.
 
 See Williams v. Glash,
 
 789 S.W.2d 261, 266 (Tex.1990) (Spears, J., dissenting). Here, however, Texas law squarely and justly imposes liability on Military Highway. The victims of this tragedy were not in the wrong place at the wrong time for the wrong reason. Military Highway's excavation was.
 

 We find more than a scintilla of evidence “that would enable reasonable and fair-
 
 *739
 
 minded people to differ in their conclusions” about whether Morin and Bautista’s deaths were foreseeable.
 
 See Moriel,
 
 879 S.W.2d at 25. We hold the evidence legally sufficient to support a proximate-cause foreseeability finding.
 
 See Lee Lewis Constr.,
 
 70 S.W.3d at 785. We overrule Military Highway’s second issue. We now address Military Highway’s alternative issues complaining of the damages awarded by the judgment.
 

 TV. JUDGMENT DAMAGES
 

 A. Mota’s Damages
 

 In its third issue, Military Highway complains the judgment improperly awarded Mota $60,000 more in damages than the jury found. We agree. Except in limited circumstances not applicable here, a trial court is required to render a judgment that conforms to the jury verdict. Tex.R. Civ. P. 301;
 
 see Phillips v. Phillips,
 
 820 S.W.2d 785, 787 n. 2 (Tex.1991);
 
 see also First Nat’l Bank in Dallas v. Zimmerman,
 
 442 S.W.2d 674, 678 (Tex.1969). The trial court denied Military Highway’s post-trial motions to modify or reform from $385,000 to $325,000 that portion of the judgment awarding damages to Mota. Appellees did not respond on appeal to Military Highway’s third issue. We find no basis, either, for the trial court’s departure from the verdict in awarding Mota damages. Accordingly, we hold that the trial court was required to render judgment for Mota for $325,000 in conformity with the jury’s verdict.
 
 See
 
 Tex.R. Civ. P. 301. We sustain Military Highway’s third issue.
 

 B. Stipulated Statutory Limitation on Damages
 

 In its fourth issue, Military Highway contends the trial court did not apply the parties’ stipulation that the liability cap contained in section 84.006 of the civil practice and remedies code applied to Military Highway as a non-profit public utility.
 
 See
 
 Tex. Crv. PRAC. & Rem.Code Ann. § 84.006 (Vernon 1997). Military Highway argues that the damages the judgment awarded to Bautista’s estate and survivors should be reduced from a total of $630,710 (which includes pre-judgment interest) to the statutory cap of $500,000. Appellees counter that Military Highway rejected the Bautista parties’ offer to settle for $500,000. They cite no authority, however, for their proposition that the damages limitation does not apply for that reason.
 

 1. Cumulative Claims
 

 The first question Military Highway presents is whether section 84.006 limits its total liability to $500,000 for the injury or death of one person, regardless of the number of people who suffered loss as a result.
 
 See id.
 
 Military Highway argues we should interpret section 84.006 in the same way as section 101.023 of the Texas Tort Claims Act.
 
 See
 
 Tex. Civ. PRAC.
 
 &
 
 Rem.Code Ann. § 101.023 (Vernon Supp. 2003). We agree. Section 101.023 limits liability under its provisions for the injury or death of one person, regardless of the number of people who suffered loss as a result.
 
 McGovern v. Williams,
 
 741 S.W.2d 373, 375 (Tex.1987) (citing
 
 City of Austin v. Cooksey,
 
 570 S.W.2d 386, 388 (Tex.1978));
 
 Tex. Dep’t of Transp. v. Ramming,
 
 861 S.W.2d 460, 467 (Tex.App.-Houston [14th Dist.] 1993, writ denied). Accordingly, we conclude that section 84.006 of the civil practice and remedies code limits liability for the injury or death of one person to $500,000, regardless of the number of people who suffered loss as a result.
 
 See
 
 Tex. Crv. Prac. & Rem.Code Ann. § 84.006 (Vernon 1997).
 

 2. Pre-Judgment Interest
 

 The second question Military Highway presents is whether the cap con
 
 *740
 
 tained in section 84.006 includes pre-judgment interest.
 
 See id.
 
 Military Highway again argues we should interpret section 84.006 like section 101.023 and hold that pre-judgment interest is included within the “damages” subject to limitation. We again agree. The damages cap in section 101.023 includes pre-judgment interest.
 
 Weller v. State,
 
 682 S.W.2d 234, 234-235 (Tex.1984) (per curiam) (op. on reh’g). We hold that the $500,000 limitation of liability contained in section 84.006 of the civil practice and remedies code includes prejudgment interest.
 
 See
 
 Tex. Civ. Prac. & Rem.Code Ann. § 84.006 (Vernon 1997).
 

 Accordingly, we hold that section 84.006 of the civil practice and remedies code limits Military Highway’s total liability to Bautista’s estate and survivors to $500,000.
 
 See id.
 
 The parties stipulated they would limit Military Highway’s damages as required by section 84.006.
 
 See id.
 
 Accordingly, we sustain Military Highway’s fourth issue.
 

 V. CONCLUSION
 

 We reverse that portion of the judgment awarding a total of $630,710 to Bautista’s estate and survivors. Instead of remanding for a new trial, we suggest remittitur by the Bautista parties of $130,710.
 
 See
 
 Tex.R.App. P. 46.3;
 
 see also Formosa Plastics,
 
 960 S.W.2d at 51. If the Bautista parties file the remittitur within fifteen days of the date of this opinion, we will supplement this opinion and: (1) affirm the jury’s liability finding; (2) reverse that portion of the judgment awarding $385,000 to Maria Del Pilar Mota and render judgment in her favor for $325,000; (3) reverse that portion of the judgment awarding a total of $630,710 to Bautista’s estate and survivors; modify the damages awarded to each as directed in the remittitur, not to exceed a total of $500,000; and affirm the judgment as modified; and (4) order the parties to bear their own costs on appeal.
 
 See Gorges Foodservice, Inc. v. Huerta,
 
 964 S.W.2d 656, 677 (Tex.App.-Corpus Christi 1997, pet. withdrawn);
 
 see also Hoechst Celanese Corp. v. Arthur Bros., Inc.,
 
 882 S.W.2d 917, 931 (Tex.App.-Corpus Christi 1994, writ denied) (op. on reh’g). If the Bautista parties do not file the suggested remittitur within fifteen days, we will supplement this opinion and: (1) reverse that portion of the judgment awarding $385,000 to Maria Del Pilar Mota and render judgment in her favor for $325,000; (2) remand the remainder of the cause for a new trial on all issues of liability and damages; and (3) tax all costs on appeal to appellees.
 
 See
 
 Tex.R.App. P. 43.2(d), 44.1(b);
 
 see also Gorges Foodservice,
 
 964 S.W.2d at 677;
 
 Hoechst Celanese,
 
 882 S.W.2d at 931.
 

 SUPPLEMENTAL ON FILING OF REMITTITUR
 

 This Court, in our opinion dated August 26, 2003, suggested that the estate and survivors of Ausencio Bautista Ramos remit the sum of $130,710 to reflect a statutory limitation of appellant Military Highway Water Supply Corporation’s total liability for Bautista’s death to $500,000. The Bautista parties have filed the suggested remittitur.
 

 Therefore, in accordance with our previous opinion and the Bautista parties’ re-mittitur, we: (1) affirm the jury’s liability finding against Military Highway; (2) reverse that portion of the judgment awarding $385,000 to appellee Maria Del Pilar Mota and modify the damages awarded to her as directed in the remittitur to $326,271.19; (3) reverse that portion of the judgment awarding a total of $630,710 to Bautista’s estate and survivors and modify the damages awarded to Bautista’s estate and the rest of his survivors as directed in the remittitur as follows: $12,711.86 to
 
 *741
 
 Maria Del Pilar Bautista; $16,949.15 to Ausencio Bautista Mota, Jr.; $16,949.15 to Yaxhira Itzel Mota Bautista; $21,186.44 to Patricia Elizabeth Bautista; and $105,982.20 to the Estate of Ausencio Bau-tista Ramos; (4) affirm the judgment as modified; and (5) order the parties to bear their own costs on appeal. The remainder of damages awarded by the trial court’s judgment remain unchanged.
 

 Justice DORSEY not participating.
 

 [2]
 

 . Appellees are the decedents’ estates and survivors.
 

 [3]
 

 . Counties without local-option stock laws in place permit the free range of livestock along farm-to-market roads. For a thorough discussion of the constitutional and statutory development of local stock laws, see
 
 Gibbs v. Jackson,
 
 990 S.W.2d 745, 747-50 (Tex.1999). State law prohibits the free range of livestock along federal and state highways.
 
 See
 
 Tex. Agric. Code Ann. §§ 143.101, 143.102 (Vernon 1982 & Supp.2003).
 

 [4]
 

 . Military Highway’s manager testified that regulations promulgated by the Texas Department of Transportation required the utility to fill the excavation. The specific regulation was not identified at trial.
 

 [5]
 

 . The horse's owner has no liability as a matter of law.
 
 See Gibbs,
 
 990 S.W.2d at 750.
 

 [6]
 

 . See note 3.
 

 [7]
 

 . We do not, by our illustration, intend to suggest the parameters of those circumstances.
 

 [8]
 

 .But see Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,
 
 960 S.W.2d 41, 48 (Tex.1998) (holding that legal-sufficiency review is conducted by considering “all the record evidence" in light most favorable to prevailing party, indulging every reasonable
 
 *737
 
 inference in that party’s favor). A unanimous supreme court, without discussing the analytical construct applied in
 
 Formosa Plastics,
 
 "reaffirmed the traditional and historical statement of the scope of review [w]hen the court stated: ‘[w]e emphasize ... that under a legal-sufficiency review, we must disregard all evidence and inferences contrary to the jury’s finding.’ ” W. Wendell Hall,
 
 Standards of Review in Texas,
 
 34 St. Mary’s L.J. 1, 160 (2002) (quoting
 
 Lenz v. Lenz,
 
 79 S.W.3d 10, 19 (Tex.2002)). We apply the supreme court’s most recent analytical construct.