Seaway Products Pipline Company v. Doyle Hanley, Tom Chambers, Aledo COnstruction, Inc., Annetta Development Corporation, and Richard E. Bloomfield, Sr.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-127-CV

SEAWAY PRODUCTS PIPELINE COMPANY APPELLANT

V.

DOYLE HANLEY, TOM CHAMBERS, ALEDO APPELLEES

CONSTRUCTION, INC., ANNETTA 

DEVELOPMENT CORPORATION, AND 

RICHARD A. BLOOMFIELD, SR.

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

-------------

INTRODUCTION

Appellant Seaway Products Pipeline Company (“Seaway”) claims the trial court erred in granting summary judgment in favor of appellees Doyle Hanley (“Hanley”), Tom Chambers (“Chambers”), Aledo Construction, Inc. (“Aledo”), Annetta Development Corporation (“Annetta”), and Richard A. Bloomfield, Sr. (“Bloomfield, Sr.”) on causes of action arising from the rupture of a pressurized gasoline pipeline during the development of a lot in a residential subdivision.  We affirm.  

FACTUAL AND PROCEDURAL BACKGROUND

In the late 1980s Chambers became the owner of the property which is the subject of this suit.  He later formed Annetta on April 9, 1997, and deeded the property to Annetta.  The following month Annetta, as owner of the land, entered into a Development Agreement with Aledo, which was identified in the agreement as the developer, whereby the property would be laid out and sold to homebuilders.
(footnote: 1)  On April 22, 1998, Sean Knight Custom Homes, Inc. (“Custom Homes”) entered into a contract with Annetta to purchase lot 26 of phase 7 of the property, and on June 15 of that year a warranty deed to Knight from Annetta was executed.  Knight then conveyed the lot to Rick Bloomfield, who subsequently transferred the lot on November 17, 1998 to his father, Richard E. Bloomfield, Sr., who owned the lot in question at the time the incident that is the subject of this lawsuit occurred.

On April 5, 1999, Melvin Walcott (“Walcott”) ruptured Seaway’s pipeline with a backhoe tractor while working on the subdivided lot owned by Bloomfield, Sr.
(footnote: 2)  A week prior to the accident, Bloomfield, Sr. was to close on the sale of the lot to prospective homeowners, the McWeeneys, but due to problems encountered by the McWeeneys, the closing had to be rescheduled. Also prior to the rescheduled closing, the McWeeneys hired Sean Knight (“Knight”), Bloomfield, Sr.’s son-in-law and owner of Custom Homes, to build a house on the lot.  While Bloomfield, Sr. was out of the country on business, Walcott, who had been hired by Knight, began clearing the lot in preparation of construction.  
Although Bloomfield, Sr. left a power of attorney with his son Rick Bloomfield to enable him to close on the lot in his father’s absence, the accident occurred before the sale could take place.

As a result of the rupture, adjoining lot owners Tim and Ashley McAuliffe (“McAuliffes”) brought various claims against Seaway, ARCO, Knight, Custom Homes, Walcott, and those they asserted were involved in the development of the subdivision and sale of the lot:  Hanley, Aledo, Chambers, and Annetta. 
Seaway asserted cross-claims against the existing defendants (except ARCO), added third party defendants, including Bloomfield, Sr., and settled with the McAuliffes. 
 
The claims between the McAuliffes and all other parties were severed, leaving only Seaway’s cross-claims and third-party claims in this cause.

Seaway asserted that Hanley, Aledo, Chambers, and Annetta were liable for negligence and gross negligence in (1) platting the lot so that the pipeline was situated in the front of the lot, (2) mislocating the pipeline easement on the recorded plat of the subdivision, (3) publicizing a sales map without reference to or otherwise indicating the existence of the pipeline, and (4) failing to warn others of the existence, location, and depth of the pipeline.  Seaway claimed that Knight and Walcott were Bloomfield, Sr.’s agents, and that Bloomfield, Sr. and Knight were engaged in a joint enterprise with regard to the development and sale of the lot.  Seaway also claimed that Bloomfield, Sr., directly and through Knight and Walcott, was (1) negligent; (2) negligent per se for failing to notify Seaway that excavation was to be conducted on the lot, as required by section 251.151 of the Texas Utilities Code
(footnote: 3); and (3) liable for Seaway’s reasonable and necessary cost of removal, remedial action, and other costs pursuant to section 361.344(a) of the 
Texas Health and Safety Code.
(footnote: 4) 
 See 
Tex. Health & Safety Code Ann.
 § 361.344(a) (Vernon 2001).

Hanley and Bloomfield, Sr. filed individual no-evidence motions for summary judgment, Aledo filed a motion combining traditional and no-evidence grounds, and Chambers and Annetta (“Chambers/Annetta”) filed a joint motion also combining traditional and no-evidence grounds.  In response to Seaway’s answer, Hanley filed detailed objections directed to each of the exhibits Seaway offered as summary judgment evidence.  Likewise, Bloomfield, Sr. objected to the affidavit of Kathy Berry, a former ARCO employee, and the “Background” section in Seaway’s summary judgment response, claiming it made factual statements that were unsupported by the evidence.

The trial court (1) granted each of appellees’ motions for summary judgment; (2) sustained, in some part, each of Hanley’s objections to the summary judgment evidence offered by Seaway; (3) sustained Bloomfield’s objections to Berry’s affidavit and the “Background” section of Seaway’s response; (4) severed Seaway’s claims against the other defendants, including Knight, Sean Knight Custom Homes, and Walcott, who did not obtain summary judgment; and (5) entered a final take-nothing judgment in favor of appellees. In two issues, Seaway claims the trial court erred in granting
 appellees’ motions for summary judgment and in striking Berry’s affidavit.
(footnote: 5) 

STANDARD OF REVIEW FOR NO-EVIDENCE MOTION

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.  
Tex. R. Civ. P.
 166a(i).  The motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  
The purpose of the rule requiring specificity in a motion for summary judgment is to provide the opposing party with adequate information for opposing the motion and to define the issues.  
Dear v. City of Irving
, 902 S.W.2d 731, 734 (Tex. App.—Austin 1995, writ denied).  The specificity requirement is satisfied if the grounds in the motion give “fair notice” to the nonmovant.  
Roth v. FFP Operating Partners
, 
L.P.
, 994 S.W.2d 190, 194 (Tex. App.—Amarillo 1999, pet. denied). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002). 

We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered.  
Johnson
, 73 S.W.3d at 197; 
Morgan v. Anthony
, 27 S.W.3d 928, 929 (Tex. 2000).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). 

HANLEY’S SUMMARY JUDGMENT
 
MOTION

Seaway challenges the form of Hanley’s no-evidence motion for summary judgment.  Specifically, Seaway claims that Hanley’s motion did not require it to produce summary judgment evidence as to any element of negligence because Hanley’s motion only “challenged negligence generally and did not specifically state the elements for which there is no evidence,” and to the extent Hanley’s motion challenged specific facts or the evidentiary components of an element, it was also deficient.

Indisputably, the common law doctrine of negligence consists of three elements:  (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach.  
Foster v. Denton Indep. Sch. Dist
., 73 S.W.3d 454, 465 (Tex. App.—Fort Worth 2002, no pet.).  Here, 
Hanley’s motion for summary judgment states, in part, that there is no evidence of legal duty or proximate cause.  Therefore, Hanley’s motion was proper and required Seaway to produce 
summary judgment evidence that raised a genuine issue of material fact
 as to the elements of duty and proximate cause.  
Tex. R. Civ. P.
 166a(i);
 Grant, 
73 S.W.3d at 215
.

While Seaway presented summary judgment evidence below, the trial court sustained Hanley’s objections to that evidence.  Therefore, before discussing whether it produced more than a scintilla of probative summary judgment evidence, Seaway had to explain why the trial court erred in striking its evidence.  However, Seaway failed to discuss the trial court’s order in its brief.
  Therefore, because Seaway failed to challenge the trial court’s order, Seaway
 
is left with no evidence on appeal that would raise a genuine issue of material fact regarding its claims against Hanley. 
See
 
Tex. R. App. P.
 38.1(e) (“The brief must state concisely all issues or points presented for review.”).

Belatedly, Seaway argues in its reply brief
 that Rule 38.1(e) of the Texas Rules of Appellate Procedure mandates that its challenge to the trial court’s grant of summary judgment be treated as a challenge to the trial court’s separate order striking Seaway’s summary judgment evidence, and thus it did not need to raise a separate issue regarding the trial court’s order striking its summary judgment evidence.  
See
 
id. 
(stating an appellate issue “will be treated as covering every subsidiary question that is fairly included”).  Seaway, however, cites no case law supporting this proposition.  Moreover, Seaway’s second issue on appeal is contrary to this proposition.  In its second issue, Seaway 
does
 raise a separate argumentregarding the trial court’s exclusion of one of Seaway’s affidavits that was offered as summary judgment evidence against Bloomfield, Sr., unlike its contentions regarding the summary judgment it offered against Hanley.  Finally, for the first time on appeal, Seaway attempts to complain of the trial court’s order in its reply brief, but it furnishes no authorities in support of its contentions.  Under this state of the record, we will not consider these matters on appeal.  
See 
Tex. R. App. P.
 38.1(e), (h); 
Triad Home Renovators, Inc. v. Dickey
, 15 S.W.3d 142, 146 (Tex. App.—Houston [14th
 Dist.] 2000, no pet.).
 
 Accordingly, in regard to Hanley’s no-evidence summary judgment, we overrule Seaway’s first issue.  

BLOOMFIELD’S SUMMARY JUDGMENT MOTION

As with Hanley, Seaway challenges the form of Bloomfield’s no-evidence motion arguing that Bloomfield, Sr. did not specify which elements of Seaway’s negligence, negligence per se, and Texas Solid Waste Disposal Act (“SWDA”)
(footnote: 6) claims lacked evidentiary support.
(footnote: 7)  However, a simple reading of Bloomfield, Sr.’s motion for summary judgment shows that he asserted that there was no evidence that (1) he had a duty or that he breached his duty as a landowner; (2) he breached a duty imposed on him by statute; or (3) he was subject to the SWDA because he does not fit the definition of a “person responsible for solid waste” under the SWDA.  Therefore, in regard to Seaway’s negligence claims, Bloomfield, Sr.’s motion required Seaway to produce summary judgment evidence that raised a general issue of material fact as to duty and breach.
(footnote: 8)  
See 
Tex. R. Civ. P.
 166a(i)
.
 
 In regard to Seaway’s claim of negligence per se under section 251.1251 of the Texas Utilities Code,
(footnote: 9) Seaway was required to produce summary judgment evidence that raised a general issue of material fact as to Bloomfield, Sr.’s breach of the duty.  
See id
.
  Finally, in regard to Seaway’s claim under the SWDA, Seaway was required to produce 
summary judgment evidence that raised a genuine issue of material fact
 regarding 
whether Bloomfield, Sr. is a person responsible for solid waste under the SWDA
.  
See id.

I.  N
EGLIGENCE
 

Regarding its negligence claims, Seaway asserted that a genuine issue of material fact exists as to whether Bloomfield, Sr., directly and through Knight and Walcott, breached the following duties:  (1) exercising ordinary reasonable care in attempting to develop the lot; (2) making reasonable efforts to investigate and determine the existence, location, and depth of the pipeline on the lot in order to ensure that it was not disturbed during development of the lot; (3) notifying all persons who were going to perform development and construction activities on the lot of the existence, location, and depth of the pipeline;
 (4) 
providing proper and adequate supervision of Walcott during development activities on the lot; 
and (5) using ordinary care to keep the lot in a safe condition.  

Seaway failed to present any summary judgment evidence showing that Bloomfield, Sr. authorized or was even aware of Knight’s and Walcott’s development of the lot.  Therefore, 
all of Bloomfield, Sr.’s alleged breaches of duty, except Bloomfield, Sr.’s duty to use ordinary care in keeping the lot in a safe condition, hinge on Bloomfield, Sr.’s negligence through Knight and Walcott during the development of the lot.  Accordingly, we will first address whether Seaway presented some probative summary judgment evidence that raised a genuine issue of material 
fact as to whether Bloomfield, Sr.’s relationship with Knight or Walcott created a duty that he breached during the development of the lot. Then, we will turn to Bloomfield, Sr.’s direct liability and determine 
if Seaway presented some probative summary judgment evidence that raised a genuine issue of material 
fact that Bloomfield, Sr. breached his duty to use ordinary care to keep the lot safe.

A.  Bloomfield’s Relationship with Knight
 
and Walcott

Seaway contends that Bloomfield, Sr. was engaged in a joint enterprise with Knight to develop and sell the lot and therefore was liable for Knight’s negligent acts committed in developing the lot, including exercising reasonable control over Walcott.
(footnote: 10) 
 Under Texas law, a joint enterprise signifies a legal relationship between two or more parties that imposes the responsibility upon each party for the negligent acts of the others while acting in furtherance of their common undertaking.  
See Shoemaker v. Estate of Whistler
, 513 S.W.2d 10, 14 (Tex. 1974)
.  
A joint enterprise is established when the parties involved have (1) an agreement, expressed or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3)
 a community of pecuniary interest in 
that common purpose
; and (4) an equal right to direct and control the enterprise.  
Id. 
at 15-17; 
Blackburn v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.
, 58 S.W.3d 263, 272 (Tex. App.—Fort Worth 2001, pet. denied). 

While Seaway’s response correctly lays out the elements required to establish a joint enterprise, it fails to adequately connect the summary judgment evidence it presented to the specific elements.  Instead, Seaway generally asserts that “[it] presented sufficient summary judgment evidence establishing that Bloomfield[, Sr.] engaged in a joint enterprise with Knight and Knight Custom Homes in order to develop and sell [the lot].”  
Specifically, Seaway argues that the evidence indicates that Bloomfield, Sr. and Knight were offering the lot and Knight’s building services in one package.

1.  Deposition Testimony 

To support its joint enterprise theory, Seaway points to the deposition testimony of Bloomfield, Sr., Knight, Tim McAuliffe, an adjoining landowner, and Shelia Mitchell, an employee of ARCO.
(footnote: 11)  Their deposition testimony shows the following
:  (1) Bloomfield, Sr. purchased the lot on November 17, 1998; (2) Bloomfield, Sr. let Knight know that lot was available, that he wanted $42,000, and he’d sell it to anybody that had $42,000; 
(3) Bloomfield, Sr. asked Knight, and no one else, to try to find a buyer because Knight worked in that general area and he had the greatest potential of running across somebody that might buy the lot
; (4) McAulifee
 saw a Knight Custom Home sign on the lot beginning in October or November of 1998; 
(5) Bloomfield, Sr. had been to the lot six or seven times before the rupture
; (6) Knight told Bloomfield, Sr. that he had found buyers (the McWeeneys) that were willing to pay Bloomfield, Sr.’s asking price
; (7) the only contact Bloomfield, Sr. had with the McWeeneys was through Knight’s office
; (8) Bloomfield, Sr. still owned the lot when the McWeeneys hired Knight to build a house on the lot a week or two before the rupture on April 5, 1999
; and (9) after the rupture, Bloomfield, Sr. asked Mitchell how long it would take for the property to be cleaned up and said something about wanting to build on the lot, which made Mitchell assume that he personally wanted to build on the lot.

Because we find it dispositive, we focus our analysis on whether the parties in this case had a community of pecuniary interest.  In determining whether 
evidence of a community of pecuniary interest exists, the Texas Supreme Court has “focused upon evidence showing pooling of efforts and monetary resources between entities to achieve common purpose, namely  reduction in costs and contemplation of economic gain by approaching the project as a joint undertaking.”  
Blackburn
, 58 S.W.3d at 276 (citing 
Tex. Dep’t of Transp. v. Able
, 35 S.W.3d 608, 614 (Tex. 2000)).  
Here, there was no evidence of a sharing of resources, pooling of funds, monetary investment, costs or benefits between Bloomfield, Sr. and Knight.  Instead, the evidence shows “[n]othing more than limited evidence of mere convenience to the parties arising from the arrangement and a shared general business interest,” which is insufficient to establish a joint enterprise.  
Id
. at 277. Therefore, Seaway failed to present evidence to raise a genuine issue of material fact that 
Bloomfield, Sr. was engaged in a joint enterprise with Knight to develop and sell the lot
.  Accordingly, Bloomfield, Sr. cannot be held liable under a joint enterprise theory for Knight’s or Walcott’s negligent acts. 

2.  Berry’s Affidavit

In its second issue, Seaway claims the trial court erred by striking Berry’s affidavit, which Seaway offered as summary judgment evidence of  agency and joint enterprise between Bloomfield, Sr. and Knight.  The affidavit reads in relevant part:

Shortly after the pipeline rupture occurred, I traveled to Parker County, Texas to review the pipeline rupture events and assist with various site investigations and clean-up activities.  After the incident occurred, I received a telephone call from [Bloomfield, Sr.]. [Bloomfield, Sr.] was calling to get information about the pipeline rupture and clean-up activities and explained he had been out of the country at the time the pipeline had been ruptured.  During the conversation, [Bloomfield, Sr.] specifically asked me when the clean-up activities would be completed because he was anxious to have construction resumed at the property. [Bloomfield, Sr.] indicated he was involved, with his son-in-law, Sean Knight, in the development of this property.

Bloomfield, Sr. objected to the affidavit, arguing that it was based on conclusory statements by an interested party which were unsubstantiated and contained Berry’s opinions and subjective beliefs.  
Specifically, Bloomfield, Sr. argued that Berry’s affidavit did not state what Bloomfield, Sr. did to “indicate” that he and Knight were involved in the development of the lot.  Additionally, Bloomfield, Sr. complained that the affidavit was produced approximately one year and four months after Seaway’s third-party petition was filed and after the conclusion of the discovery period in this case.  The trial court sustained Bloomfield, Sr.’s objections and struck the affidavit.

We review a trial court’s rulings in admitting or excluding evidence under an abuse of discretion standard.  
Nat’l Liab. & Fire Ins. Co. v. Allen, 
15 S.W.3d 525, 527 (Tex. 2000).  An appellate court must uphold the trial court’s evidentiary ruling if there is any legitimate basis in the record for the ruling.  
Owens-Corning Fiberglass Corp. v. Malone
, 972 S.W.2d 35, 43 (Tex. 1998).  To be competent summary judgment evidence, an affidavit must be based on personal knowledge, set forth facts admissible in evidence, and affirmatively show the affiant’s competency to testify as to the matters stated therein.  
Tex. R. Civ. P.
 166a(f).  Texas case law holds that unsupported conclusory statements are not credible and are not susceptible to being readily controverted, and as a result are not proper summary judgment evidence.  
Rizkallah v. Conner
, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st
 Dist.] 1997, no writ).  

Berry’s affidavit is such a statement.  Whereas a sentence in the affidavit explains that Bloomfield, Sr. “specifically asked” a question related to the clean-up of the lot, nothing in the following sentence sets forth the facts to support what Bloomfield, Sr. did to “indicate” that he was involved with Knight in developing the property
. 
 Moreover, concluding that Bloomfield, Sr. and Knight were “involved” in developing the lot provides no certainty as to what Bloomfield, Sr. actually told Berry his relationship was with Knight.  In fact, subdivision developers are always “involved” with both builders and home buyers to the extent the sales of lots are in conjunction with builders, home buyers, or both, but this does not make them joint entrepreneurs.  Therefore, the trial court did not abuse its discretion when it struck the affidavit. 
 We overrule Seaway’s second issue challenging the trial court’s order striking Berry’s affidavit.  

B.  Bloomfield, Sr.’s Duty to Use Ordinary Care to Keep the Lot Safe  

Turning from Bloomfield, Sr.’s liability through Knight and Walcott, we must now determine 
if Seaway presented some probative summary judgment evidence 
that Bloomfield, Sr. personally breached his duty as a landowner.  As a landowner, Bloomfield, Sr.’s only duty was to use reasonable care in keeping his land in a safe condition.  
See Redinger v. Living, Inc.
, 689 S.W.2d 415, 417 (Tex. 1985).  This duty to keep the premises in a safe condition subjects a landowner to direct liability for negligence in two situations:  (1) those arising from a premises defect and (2) those arising from an activity or instrumentality on the land.  
Id
.  Whether a duty exists is a question of law for the court to decide based on the facts and circumstances.  
Golden Spread Council, Inc. #562 of the Boy Scouts of Am. & Boy Scouts of Am. v. Akins
, 926 S.W.2d 287, 289 (Tex. 1996).  

In its response to Bloomfield, Sr.’s no-evidence summary judgment, Seaway claims Bloomfield, Sr. is liable under both situations.  However, in its appellate brief, Seaway asserts that its negligence claim was not based on premises defects and that this is not a premises-defect case with respect to Bloomfield, Sr.’s actions or omissions.
  Instead
, Seaway argues that the holding in 
Phillips Pipeline Co. v. Razo
, 420 S.W.2d 691 (Tex. 1967), places a duty on Bloomfield, Sr. arising from “his activities on the [l]ot.”

In 
Phillips,
 an employee of an excavator was injured when a bulldozer operated by his employer hit and ruptured a buried pipeline.  
Id.
 at 692.
  The injured employee brought a lawsuit against Phillips, the pipeline operator, for its negligence in failing to properly inspect and warn of the presence of the pipeline.  
Id
.  The Texas Supreme Court held that a person excavating or digging up the surface owes a initial duty to make a reasonable effort to determine the location of known pipelines in order to avoid contact with them.  
Id
. at 694-96.  The court concluded that 
Phillips’s duty to prevent contact between its pipeline and heavy construction equipment by marking or giving warning of the pipeline only would arise only if it were once it is notified that an extraordinary or damaging use would be made of the surface near its pipeline
.  
Id
. at 695-96.  Here, Seaway presented evidence showing Bloomfield, Sr. was aware of the pipeline, but it failed to present evidence showing that Bloomfield, Sr. was aware of Knight’s or Walcott’s activities on the surface which resulted in the rupture. Therefore, Seaway failed to present evidence raising a genuine issue of material fact that Bloomfield, Sr. did anything on the lot that created a duty under 
Phillips
.  
See id
.
  After considering the foregoing and concluding that Seaway withdrew its earlier claim of a premises defect, Seaway failed to present evidence raising a genuine issue of material fact regarding its claims of negligence against Bloomfield, Sr. as a landowner. 
 
Therefore, having determined that there was no evidence of a relationship between Bloomfield, Sr. and Knight, or that Bloomfield, Sr. breached his duty to keep the lot safe, we overrule Seaway’s first issue in regard to its negligence claims.  

II.  N
EGLIGENCE
 P
ER
 S
E

In order to maintain its negligence per se claim against Bloomfield, Sr.,  Seaway was required to bring 
forward some probative evidence that raised a genuine issue of material fact
 on whether Bloomfield, Sr. breached a duty imposed by section 251.151 of the Texas Utilities Code.  
See 
Tex. R. Civ. P.
 166a(i).  Section 251.151 provides as follows:

[A] person who intends to excavate shall notify a notification center not earlier than the 14th
 day before the date the excavation is to begin or later that the 48th
 hour before the time the excavation is to begin, excluding Saturdays, Sundays, and legal holidays.

T
EX
. U
TIL
. C
ODE
 A
NN
. § 251.151(a)
.  Seaway argues section 251.151 imposed a duty on Bloomfield, Sr. to notify Seaway that he or Knight and Walcott intended to conduct excavation work on the lot and that Bloomfield, Sr.’s unexcused violation of the statute constituted negligence per se.

In support of its contentions, Seaway points to the deposition testimony of Walcott and Knight.  In Walcott’s deposition, he testified that he was unaware that the pipeline existed and in his previous dealings with Knight, he relied on Knight to notify him of any pipelines or underground utilities.  Similarly, Knight testified that it was normally his responsibility to call and locate the pipeline and utilities on the property and then to  inform Walcott of their location.
(footnote: 12)
 However
, Seaway failed to present evidence that Bloomfield, Sr. knew of the excavation or gave anyone permission to conduct the excavation, or, as previously discussed, that a joint enterprise existed or that Walcott was his agent, employee, or independent contractor.  As a result, there is no evidence raising a genuine issue of material fact that Bloomfield, Sr. breached a duty imposed on him by section 251.151.  
See Impson v. Structural Metals, Inc.
, 487 S.W.2d 694, 696 (Tex. 1972) (stating that a person’s violation of a statute is not negligence per se if he neither knows nor should know of the occasion for compliance with the statute
).  Accordingly, in regard to Seaway’s negligence per se claim, we overrule its first issue.   

III.  T
EXAS
 S
OLID
 W
ASTE
 D
ISPOSAL
 A
CT 
 

In order to maintain its SWDA claim against Bloomfield, Sr., Seaway was required to bring 
forward some probative evidence that raised a genuine issue of material fact
 on whether Bloomfield, Sr. is a person responsible for solid waste under the SWDA.  
See 
Tex. Health & Safety Code Ann.
 §§
 361.271, 361.344;
 Moore
, 981 S.W.2d at 269
.
 
 The only evidence that Seaway offered was Bloomfield, Sr.’s deposition testimony that he owned the lot at the time of the gasoline pipeline rupture and that he still owns the lot.

Under the SWDA, a person is responsible for solid waste if the person is an owner or operator of a “solid waste facility.”  
Tex. Health & Safety Code Ann.
 § 361.271(a)(1).  “Solid waste facility” is defined to include all contiguous land, including all structures, appurtenances, and other improvements, “used for processing, storing, or disposing of solid waste.”  
Id
. § 361.003(36).  “Processing” includes “the transfer” of solid waste “for reuse or disposal.”  
Id
. § 361.003(25).   “Disposing” is not defined in the statute; however, “disposal” is defined as the discharging, depositing, injecting, dumping, spilling, leaking, or placing of solid waste or hazardous waste.  
Id
. § 361.003(7). 

Beyond the statutory definitions, the Texas courts that have dealt with the SWDA have not fully addressed who qualifies as a person responsible for solid waste.  
R.R. St. & Co., Inc. v. Pilgrim Enters. Inc.
, 81 S.W.3d 276, 290 (Tex. App.—Houston [1st 
Dist.] 2001, no pet.); 
Compton v. Texaco
, 
Inc.
, 42 S.W.3d 354, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)
.  Therefore, this is an issue of first impression.  In construing the SWDA, our objective is to determine and give effect to the intent of the legislature.
  
Liberty Mut. Ins. Co. v. Garrison Contractors, Inc
., 966 S.W.2d 482, 484 (Tex. 1998);  
R.R. St.
, 81 S.W.3d at 288.  
In doing so, we begin with the statute's plain language because we assume that the legislature tried to say what it meant and, thus, that its words are the surest guide to its intent.  
Fitzgerald v. Advanced Spine Fixation Sys., Inc.
, 996 S.W.2d 864, 865-66 (Tex. 1999).  We also consider the entire act, its nature and object, and the consequences that would follow from each construction.  
See Atascosa County v. Atascosa County Appraisal Dist.
, 990 S.W.2d 255, 258 (Tex. 1999).  
 We presume the legislature intended a just and reasonable result in enacting a statute.  
In re D.R.L.M.
, 84 S.W.3d 281, 290 (Tex. App.—Fort Worth 2002, pet. denied).
  

Here, 
Seaway 
failed to raise a genuine issue of material fact regarding 
whether Bloomfield, Sr. 
owned or operated any land used for processing, storing, or disposing of solid waste
.  While Seaway points to evidence showing that the ruptured pipeline ran through Bloomfield, Sr.’s subdivided lot, Seaway failed to present any evidence showing how Bloomfield, Sr. was liable under the SWDA when Seaway owned the pipeline and the easement on which it is buried. 
 Moreover, it is unfathomable that the legislature intended every residential landowner in Texas who has a pipeline easement running underneath their property to be considered an owner and operator of a “solid waste facility.”  Accordingly, in regard to Seaway’s claim under the SWDA, we overrule its first issue.   

ALEDO’S AND CHAMBERS/ANNETTA’S 

SUMMARY JUDGMENT MOTIONS 

In its petition, Seaway claimed that the “developers,” Aledo, Chambers, and Annetta (“Aledo/Chambers/Annetta”) breached the following duties: 
(1) platting the lot so that the pipeline was not situated in the front of the lot, (2) failing to accurately locate the pipeline easement on the recorded plat of the subdivision, (3) publicizing a sales map without reference to or otherwise indicating the existence of the pipeline, and (4) failing to warn those that purchased and planned to build on the lot of the existence, location, and depth of the pipeline.
(footnote: 13)  Aledo/Chambers/Annetta’s summary judgment motions asserted both traditional and no-evidence grounds.  In their traditional grounds, they asserted that their summary judgment evidence negated the negligence elements of duty and causation.  Chambers/Annetta’s traditional grounds also attempted to negate gross negligence.  As a result of their no-evidence motion, Aledo/Chambers/Annetta required Seaway to raise a genuine issue of material fact as to the negligence elements of duty and causation, as well as the gross negligence element of malice.  The trial court granted both motions without specifying the ground upon which its judgment was based.  Because we find it dispositive, we focus our analysis on whether Seaway produced sufficient summary judgment evidence that raised a genuine issue of material fact as to causation. 

I.  P
ROXIMATE
 C
AUSE
  

To prevail on a negligence claim, a plaintiff must prove that the defendant’s act or failure to act was a proximate cause of the plaintiff’s injury.  
First Assembly of God, Inc. v. Tex. Util. Elec. Co.
, 52 S.W.3d 482, 491 (Tex. App.—Dallas 2001, no pet.).
 
 There are two elements of proximate cause: cause-in-fact and foreseeability.  
Id
. at 493. 
 “Cause-in-fact” means the act or omission was a substantial factor in producing the injury and, without it, the harm would not have occurred.  
Id
.  “Foreseeability” means the actor, as a person of ordinary intelligence, should have anticipated the danger to others created by his act.  
Id
.

A.  Platting the Lot

First, Seaway claims that the “developers” caused the rupture by platting the lot so that the pipeline crossed the front of the lot.  In support of this assertion, Seaway’s answers conclude, “[h]ad the subdivision been platted in a reasonable and prudent manner so as to have the [p]ipeline pass through a green space or the rear or side of the lots, this incident would not have occurred.”  In other words, Seaway claims that “but for” the lot being platted so that the pipeline was under the front yard, the rupture would not have occurred.  In support of its conclusion, Seaway cites to several pages of the deposition testimony of Coy Garrett, Seaway’s expert.  Additionally, Seaway concludes that “the evidence also establish[ed] that damages caused by [the developers’] negligence were foreseeable,” again citing to Garrett’s deposition testimony.

Having reviewed those sections of Garrett’s testimony, we conclude that Seaway has failed to present evidence raising a genuine issue of material fact that (1) the developers’ platting of the lot so that the pipeline ran under the front of the lot as opposed to the back or sides was a proximate cause of the rupture or (2) the developers could have foreseen the rupture.  The closest Seaway came to cause-in-fact testimony was when Garrett testified, based on his rough sketches of the development with the pipeline on the sides or back of the lots, that had Walcott dug a hole in “the front” of the lots as he testified they should have been configured, Walcott would not have hit the pipeline.  However, Garrett’s testimony assumes that Walcott would have dug in “the front” of the lot no matter which part of the lot “the front” was.  Furthermore, there is no evidence why Walcott decided to dig in the front part of the lot, and there is no evidence that he would have dug in the same location if the lot had been configured differently.  Therefore, Garrett’s assumption is not a reasonable inference from the evidence and does not constitute competent summary judgment evidence.  
See 
Tex. R. Evid.
 703, 705(c)
.  
Accordingly, there is no evidence showing that but for the developers platting the pipeline in the front of the lot, Walcott would not have hit the pipeline.  

In regard to foreseeability, Garrett testified that it was reasonably foreseeable for Walcott or someone like him to dig in the front of the lot. However, Seaway was required to raise some evidence that the harm was foreseeable, not simply that the act that led to the harm was forseeable.  
See First Assembly of God
, 52 S.W.3d at 491.
 
 While there is evidence that the developers could have foreseen construction activities taking place in the front of the lot where the pipeline was located, Seaway offered no evidence that the developers could have foreseen that Walcott would bury rocks in the front of the lot, ignore the pipeline markers, and violate the statutory mandate to call the one-call number in order to determine the pipeline’s location before digging.  Accordingly, there is no evidence showing that the developers could have foreseen the rupture.

B.  Failing to Locate the Pipeline Easement on the Recorded Plat

Next, Seaway asserts that the developers caused the rupture by failing to accurately locate the pipeline easement on the recorded plat.  However, Seaway failed to present any evidence that Knight or Walcott relied on the plat to locate the pipeline easement.  Therefore, Seaway has presented no evidence of a cause-in-fact between the alleged error on the plat and the pipeline rupture.

C.  Publicizing a Sales Map Without Referencing the Pipeline Easement 

Finally, Seaway alleged that the developers caused the rupture by publicizing a sales map to all potential purchasers without referring to or otherwise indicating the existence of the pipeline.  In support of this argument, Seaway points to summary judgment evidence showing that (1) the McWeeneys gave a sales map to Charles Wilkes, a residential designer hired by the McWeeneys; (2) Wilkes used the sales map to draft a site plan; and (3) Knight eventually gave the site plan to Walcott.
(footnote: 14)  In other words, Seaway argues that but for the sales map omitting the pipeline, Wilkes would have included the pipeline in the site map and Walcott would have been aware of the pipe.  However, Seaway fails to present any evidence that the sales map Wilkes used to draft the site plan was the sales map for the lot at issue (lot 26).  In fact, the evidence show just the opposite; the sales map the McWeeneys gave Wilkes and on which he based his site plan was for a different lot (lot 29) that did not have a pipeline easement.  Accordingly, Seaway has presented no evidence of a cause-in-fact between the omission of the pipeline on the sales map and the pipeline rupture.

Having concluded that Seaway failed to present sufficient evidence raising a genuine issue of material fact as to each of its negligence claims against the developers, we overrule Seaway’s first point 
in regard to its negligence claims against the developers.

II.  G
ROSS
 N
EGLIGENCE

In their summary judgment motions, the developers claim that there is no evidence that they acted maliciously.  However, 
it is unnecessary to determine if Seaway presented some evidence raising a genuine issue as to malice because we have held that it failed to provide some evidence of negligence; thus, Seaway is not entitled to recover damages for gross negligence.  
See Trevino v. Lighting Laydown, Inc.
, 782 S.W.2d 946, 949-50 (Tex. App.—Austin 1990, writ denied)  (holding that one’s conduct cannot be grossly negligent without being negligent); 
Fort Worth Hotel Ltd. P’ship v. Enserch Corp., 
977 S.W.2d 746, 752 (Tex. App.—Fort Worth 1998, no pet.)
 (citing 
Trevino
 for same).  
Accordingly, in regard to Seaway’s gross negligence claims against the developers, we overrule its first issue.   
  

CONCLUSION

 Having overruled Seaway’s issues on appeal, we affirm the judgment of the trial court. 

BOB MCCOY

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and MCCOY, JJ.

DELIVERED:  December 2, 2004

FOOTNOTES
1:
Hanley owns Aledo.  Primarily, Aledo’s work consisted of building the roads and water, sewer, and utility lines in the subdivision.

2:
Seaway owns the pipeline and the easement on which it is buried, and ARCO Pipeline Company (“ARCO”), who is not a party on appeal, operates the pipeline.

3:
Tex. Util. Code Ann. 
§ 251.151 (Vernon Supp. 2004-05).

4:
To the extent Seaway claimed that 
Hanley, Aledo, Chambers, and Annetta 
 were liable under the Texas Health and Safety Code, Seaway does not contest any summary judgment granted as to such claims.

5:
Seaway advances its second issue conditionally, stating “the [c]ourt may not need to reach and decide whether this was error because Bloomfield never challenged Seaway to produce evidence upon Bloomfield’s joint enterprise with Knight.  If the issue must be reached, it was error to strike Bloomfield’s admission.”

6:
See 
Tex. Health & Safety Code Ann.
 § 361.344
.

7:
Seaway also argues that because Bloomfield, Sr. attached and referred to summary judgment evidence, his no-evidence motion should be treated as a traditional motion or the evidence should simply be ignored.  In accordance with the instructions of the Texas Supreme Court, we will simply ignore the evidence.  
See Binur v. Jacobo
, 135 S.W.3d 646, 650 (Tex. 2004) (stating that a no-evidence summary judgment which attaches summary judgment evidence should not be treated as a traditional summary judgment motion).  

8:
Additionally, Bloomfield, Sr.’s no-evidence summary judgment motion was sufficient to challenge Seaway’s claims of negligence committed by Bloomfield, Sr., as well as those claims that could be imputed to him by the actions of Knight or Walcott.  
See 
Tex. R. Civ. P.
 166a(i).  

9:
Tex. Util. Code Ann. 
§ 251.151.

10:
In its answer to Bloomfield, Sr.’s no-evidence summary judgment, Seaway also asserts that Walcott was an agent and employee of Bloomfield, Sr.  However, Seaway fails to address this issue in its brief.  In the interest of justice, we will briefly discuss the merits of the summary judgment as to that issue.  Under the agency theory, “the right to control” test is typically applied. 
 Royal Mortgage Corp. v. Montague
, 41 S.W.3d 721, 733
 
(Tex. App.—Fort Worth 2001, no pet.).  Under this test, the court examines whether the alleged principal (Bloomfield, Sr.) had the right to determine the details of the agent’s (Walcott’s) work.  
See id
.  It is the extent of the principal’s control over the details of accomplishing the assigned task that primarily distinguishes that status of independent contractor from agent. 
See id
.  Here, Seaway failed to present any evidence that Bloomfield, Sr. even knew who Walcott was, much less had the right to direct his work.  Moreover, Seaway failed to present any evidence that would raise a genuine issue of material fact as to an independent contractor relationship between Bloomfield, Sr. and Walcott.  
See Pitchfork Land & Cattle Co. v. King
, 162 Tex. 331, 346 S.W.2d 598, 602-03 (1961).  
Therefore, Seaway presented no evidence that Walcott was an agent, employee, or independent contractor of Bloomfield, Sr.

11:
In addition to this deposition testimony, Seaway points to the affidavit of Berry, which the trial court later stuck pursuant to Bloomfield, Sr.’s objection.  In the following section, we discuss Seaway’s second issue challenging the trial court’s decision to strike the affidavit.

12:
Seaway also contends, without citing to the record, that Bloomfield, Sr.’s deposition testimony establishes that he also failed to notify Seaway and/or ARCO of the excavation.  However, Bloomfield, Sr.’s deposition testimony reflects that
 (1) he was in the Phillippines when the accident occurred, (2) he had not given anyone permission to conduct activities on his land, (3) he was not a part of Knight’s business and therefore not aware that Knight had been hired by prospective buyers to build a house on the lot subsequent to the closing, (4) Walcott, whom he did not know, was a trespasser who entered onto Bloomfield, Sr.’s land without his permission, and (5) Walcott was not in the performance of any duties for Bloomfield, Sr. 

13:
At oral argument, Seaway conceded that it no longer pursued its claim regarding the developers’ failure to warn. 

14:
According to Wilkes’s deposition testimony, a site plan is not used for building purposes, but is a preliminary document used by builders solely to price the cost of constructing a new home and provide their clients with an intelligent budget.