**DISSENT and Opinion Filed October 17, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-01331-CV

**ONCOR ELECTRIC DELIVERY COMPANY LLC, Appellant**
**V.**
**VICTOR QUINTANILLA, OSCAR INTERIANO ROSALES, AND ACCIDENT FUND INSURANCE COMPANY OF AMERICA, Appellees**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-03500**

## DISSENTING OPINION
Opinion by Justice Schenck

Plaintiffs Victor Quintanilla and Oscar Rosales, while employed by Alvarenga Underground Construction, LLC (Alvarenga), removed Oncor's guy anchor—without anyone notifying Oncor or otherwise complying with the statute regulating the performance of activities near high voltage overhead lines—causing the power line to move with the resulting injuries to them both. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 752.001–.008. The majority nevertheless concludes that the injuries Victor and Oscar suffered when their own actions caused the guy wire to become energized were foreseeable to Oncor and finds no error in the trial court's refusal to include the project's general contractor, Henkles & McCoy, Inc. (HMI),

in the negligence and apportionment questions that were submitted to the jury at trial.

I dissent from the majority's opinion because the evidence negates foreseeability, an essential element of Victor and Oscar's claim against Oncor, and because the majority's conclusion regarding the submission of HMI as a potential responsible third party is inconsistent with recent holdings of this Court, including *Lopez v. Sunstate Equipment Co.*, No. 05-21-00100-CV, 2022 WL 3714496, at *7 (Tex. App.—Dallas Aug. 29, 2022, no pet.) (mem. op.), and *In re Cook*, 629 S.W.3d 591, 598 (Tex. App.—Dallas 2021, orig. proceeding).

## DISCUSSION

### I.     Jury Charge—Submission of HMI as Potential Responsible Third Party

On the day they were injured, Victor and Oscar, as employees of Alvarenga, were charged with digging a hole for a road bore.  Alvarenga was acting as a subcontractor of HMI.  The trial court granted Oncor's motions for leave to designate Alvarenga and HMI as responsible third parties and then refused to include HMI in the negligence and apportionment questions that were submitted to the jury at trial.

Texas law allows a tort defendant to designate a person as a "responsible third party."  TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a).  Chapter 33 defines "responsible third party" as "any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, . . . by other conduct or activity that violates an

–2–

applicable legal standard, or by any combination of these." *Id.* § 33.011(6). The designation's purpose is to have the responsible third party's actions or omissions submitted to the trier of fact to determine whether the party caused or contributed to the cause of the claimant's harm. *Id.* § 33.003. This may reduce the percentage of responsibility attributed to the defendant, thus ultimately reducing the defendant's liability to the claimant. *Id.* § 33.013.

A designated responsible third party should be submitted to a jury for consideration if the designating party has produced sufficient evidence, more than a scintilla, for a reasonable jury to find the third party responsible for a portion of the claimed injury. *In re Molina*, 575 S.W.3d 76, 80 (Tex. App.—Dallas 2019, orig. proceeding). This occurs when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions concerning a party's responsibility for any injury. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). A defendant may designate a responsible third party even though the third party has defenses to liability or cannot be formally joined as a defendant, or both. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 868–69 (Tex. 2009). Our recent caselaw broadly requires this designation for the jury's assessment. *Cook*, 629 S.W.3d at 598. The broad standard for designation applies regardless of its actual potential reduction of liability, and, in this case, there is also at least some evidence of actual liability on the part of the general contractor, especially as our recent caselaw has addressed the duty question.

A general contractor, such as HMI, normally does not have a duty to see that an independent contractor performs work in a safe manner. *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998) (per curiam). But a duty may arise when a general contractor retains "some control over the manner in which the independent contractor's work is performed." *Id.* The general contractor's duty of care is commensurate with the control it retains over the contractor's work. *Id.* at 355. Other of our recent caselaw holds more generally that a power of control over the means of injury in a worksite is sufficient to support a duty and, hence, potential liability in the eyes of a jury. *See Lopez*, 2022 WL 3714496, at *7 (owner of equipment left at worksite potentially liable for not exercising authority to remove it).

A general contractor can retain control over an independent contractor with actual control or other means, such as a contract, which may impose control upon a party thereby creating a duty of care. *Pollard v. Mo. Pac. R.R.*, 759 S.W.2d 670, 670 (Tex. 1988) (per curiam). If the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability. *Id.*

The evidence showed HMI, as a general contractor, contractually retained some responsibility for the worksite and actually exercised some control over the worksite. In its contract with Alvarenga, HMI was to conduct periodic and final inspections and tests to ensure that Alvarenga's work conformed to the contract

–4–

requirements. And Alvarenga had the right during progress of the work to make changes in the drawings, plans, specifications or other orders, or the description of the work. *See City of Saginaw v. Cruz*, No. 05-19-01141-CV, 2020 WL 5054802, at *6 (Tex. App.—Dallas Aug. 27, 2020, no pet.) (mem. op.) (concluding City had constructive knowledge that manhole cover did not conform to contract when City had right to subject contractor's work to mandatory inspection and to ensure work conformed to contract).

In addition, the evidence established HMI does spot inspections to find out if its contractors know what they are doing. HMI did not have anyone at the site doing a spot inspection on the morning that appellees dug up the guy anchor. According to HMI's safety and health officer, had he been present, "a lot of stuff probably would never had happened because it would have been addressed beforehand."

HMI's certified safety and health officer indicated that HMI assumed Alvarenga's employees had the correct training and that it now knows they did not. After the accident, and after OSHA found Alvarenga violated various OSHA rules, HMI suspended Alvarenga and intended to terminate their subcontract agreement, although the evidence suggested that Alvarenga continued to work for HMI up until the time of trial. This is more than a scintilla of evidence that HMI retained some control over the work and did not adequately supervise the worksite or engage a competent subcontractor. Accordingly, a reasonable jury could find that HMI bore a percentage of responsibility for the claimed injuries. Thus, I believe, under any

–5–

standard, the evidence supported submission of HMI as a potential responsible third party, and certainly under recent decisions of this Court concerning the scope of designation and the potential for liability. Thus, the trial court erred in refusing to do so.

I also believe the trial court's refusal to submit the issue was harmful. I believe had the jury been asked to answer an issue that apportioned the responsibility among all responsible parties, the jury might not have awarded the same amount against Oncor. *E.g., Lopez*, 2022 WL 3714496, at *7; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 33.013 (defendant liable for the percentage of damages found by trier of fact equal to that defendant's percentage of responsibility, unless the percentage of responsibility attributed to the defendant is greater than 50%, in which case the defendant's liability is joint and several). The jury apportioned 48% of the responsibility to Oncor. Thus, Oncor is not jointly and severally liable for the damages awarded and any apportionment of responsibility to HMI could directly impact Oncor's ultimate liability.

The court's error in refusing to submit the issue of HMI's potential responsibility prevented Oncor from properly presenting its case on appeal by depriving it of the ability to conclusively show that the jury would have answered an apportionment issue that would cast a judgment in an amount that differs from the amount Oncor must pay under the judgment as rendered. TEX. R. APP. P. 44.1(a)(2); *Sun Dev., L.P. v. Hughes*, No. 09-12-00524-CV, 2014 WL 4755467, at

*14 (Tex. App.—Beaumont Sept. 25, 2014, pet. denied) (mem. op.). Accordingly, I would sustain Oncor's third issue concerning submission of HMI's negligence to the jury and conclude that, at the very least, Oncor is entitled to a new trial. *See id.*

## II. Foreseeability—Anticipation of Injury

Victor and Oscar asserted a negligence claim against Oncor. To succeed on a negligence claim, a plaintiff must establish a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009); *Bastida v. Aznaran*, 444 S.W.3d 98, 106 (Tex. App.—Dallas 2014, no pet.). Both the duty and proximate-cause elements rest on a finding of foreseeability. *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 149 (Tex. 2022) (main determinant of duty is foreseeability); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (foreseeability is an element of proximate cause). The foreseeability analysis is the same for both duty and proximate cause. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 659 (Tex. 1999). In addition, proximate cause has a second component, cause in fact. *Bos v. Smith*, 556 S.W.3d 293, 303 (Tex. 2018).

Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act or omission created for others. *Nixon v. Mr. Prop. Mgt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985) (plurality op.). "Foreseeability usually is determined by whether the defendant is aware of prior, similar conduct by third parties" and, as is also relevant here, by whether

–7–

Oncor was given notice of the activity near its line and should have foreseen—and guarded against—the risks associated with the physical removal of the line's support. *See Bos*, 556 S.W.3d at 303 (quoting *Taylor v. Louis*, 349 S.W.3d 729, 737 (Tex. App.—Houston [14th Dist.] 2011, no pet.)); *see also Seaway Prods. Pipeline Co. v. Hanley*, 153 S.W.3d 643, 658 (Tex. App.—Fort Worth 2004, no pet.) (concluding record contained no evidence developer could have foreseen contractor would ignore pipeline markers and violate statutory mandate to call the one-call number to determine pipeline's location before digging).

In addition to the general nature of the danger, the trial court must also consider whether the injury to the particular plaintiff involved, or one similarly situated, could be anticipated. *Bos*, 556 S.W.3d at 303. Unless both requirements are met, there can be no finding of foreseeability and thus no liability for negligence. *See id.* "Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). "'Proof of negligence in the air, so to speak, will not do.' . . . [t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v. Long Island R.R.*, 162 N.E. 99, 99 (N.Y. 1928).[1] Although foreseeability is usually

---

[1] *Palsgraf* teaches that the duty question properly considers the foreseeability of the injured party. Mrs. Palsgraf was standing on a platform at the defendant's railroad waiting for a train. Some distance away,

a question of fact, it becomes a question of law when the evidence is undisputed and only one reasonable inference can be drawn. *See Phan Son Van v. Pena*, 990 S.W.2d 751, 755 (Tex. 1999). For the reasons set forth below, Victor's and Oscar's actions were not foreseeable as a matter of law.

The evidence is conclusive that the pole was stationary and had in fact been in place for thirty years and attached to the guy-wire system at all relevant times prior to appellees' digging up and removing the guy anchor. As installed, the guy wire was incapable of becoming energized absent some external force causing a release of tension, such as a weather event or someone driving into the utility pole, which are not at issue here. Thus, absent some other foreseeable event, Oncor had no reason to foresee a risk of harm associated with its guy-wire system. *See Greenwald v. N. States Power Co.*, 32 N.W.2d 320, 322–23 (Minn. 1948) (uninsulated guy wires posed no foreseeable risk of harm where remained in place, without incident, for six years); *see also Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 446 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.) (holding premises owner not liable for injury from electrical-line contact because line, as constructed, did not become

---

porters tried to help a passenger board a train. As they assisted him, they dislodged a package of fireworks he was carrying. The package fell to the rails and exploded, knocking over scales and injuring Mrs. Palsgraf. 248 N.E. at 99. The court held that, regardless of whether the railroad might have acted in a generally wrongful manner, it was not negligent with regard to Mrs. Palsgraf. *See id.* The court explained that because Mrs. Palsgraf was not so situated to the wrongful act that her injury might reasonably have been foreseen, the defendant did not owe a duty to protect her from the resulting injury. *Id.*

dangerous to those working below until contractor caused gin pole to come into contact with line).

No other reasonably foreseeable event existed in this case. The hazardous conduct was that of Victor and Oscar. Oncor's corporate representative, who had been employed by Oncor for over twenty nine years, testified that he was not aware of any other incidents like this one and no one gave Oncor notice of the performance of any activity near its overhead line to alert Oncor to take additional precautionary measures. The potential for exposure to electricity is inherent across the length of the distribution network. The prospect that anyone might alter or disturb the line in such a way as to cause contact at any particular point across the network is not foreseeable as the Texas Supreme Court long ago held addressing the same issue. *See Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784 (Tex. 1988).[2]

In this case, the jury found Victor, Oscar, and Alvarenga did not "notify Oncor of the work, activity, or function they would be performing at least 48 hours before the work began, and negotiate a satisfactory mutual arrangement with Oncor to provide temporary de-energization and grounding, temporary relocation or raising of its overhead line, or temporary mechanical barriers to separate and prevent contact between the line and the material or equipment involved in the work activity, or function" as required by section 752.003(b) of the Health and Safety Code. *See*

---

[2] The comprehension of the dangers of moving or contacting electrical lines is so well known that a distributor of it cannot be held liable, as a matter of law, for every preventable injury from it, particularly injuries resulting from alteration or removal of safety features.

–10–

HEALTH & SAFETY § 752.003(b). When, as here, a party fails to notify the utility before beginning work near a power line, it is unforeseeable that an individual will be injured by the utility's infrastructure. *See, e.g.*, *Seaway Prods. Pipeline*, 153 S.W.3d at 658. Accordingly, there is no evidence showing that Oncor could have foreseen Victor and Oscar digging up the guy anchor. *Id*. This conclusion regarding lack of foreseeability is further supported by Oncor's expert's testimony that Oncor could not have reasonably foreseen that someone would excavate the guy anchor without authorization or notice to Oncor and appellees' expert's admission that he was not suggesting that Oncor should anticipate this particular event. Under these circumstances, any risk of harm to appellees was beyond the realm of reasonable probability and render the occurrence at issue unforeseeable. Accordingly, the evidence is legally insufficient to support the jury's finding Oncor's negligence proximately caused the occurrence in question. Accordingly, I would sustain Oncor's first issue.

## CONCLUSION

Because the evidence negates foreseeability and more than a scintilla of evidence exists from which a rational jury could conclude HMI bore responsibility for a portion of the claimed injuries, I respectfully dissent from the majority's decisions to the contrary.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

191331DF.P05